**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

— — —

**HONORABLE R. GARY KLAUSNER, JUDGE PRESIDING**

---

UNITED STATES OF AMERICA,    Case No. 04-373(A)-RGK

     Plaintiff,

vs.

HAI WAKNINE,

     Defendant.

---

**CHANGE OF PLEA HEARING**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**Los Angeles, California**

**March 14, 2011**

---

APPEARANCES:

  For the Plaintiff:    Mark Childs

  For the Defendant:    Ron Richards    David Kenner

  Reported by:        Nichole Rhynard, RMR, CRR,
                  CA CSR #137256
                  Official Court Reporter
                  nicholerhynard@yahoo.com
                  206.579.0261

LOS ANGELES, CALIFORNIA; March 14, 2011, 10:10 a.m.
_____

THE COURT:  Calling calendar item number 12, Case No. Criminal 04-373(A)-RGK, United States of America versus Hai Waknine.

MR. CHILDS:  Mark Childs on behalf of the United States.

MR. RICHARDS:  Ronald Richards on behalf of Mr. Waknine.  My client has Turrets Syndrome.  He sometimes whistles.  He's not being disrespectful.

THE COURT:  No problem.

MR. KENNER:  David Kenner appearing on behalf of Mr. Waknine who is present, on bond.

THE DEFENDANT:  Good morning.

THE COURT:  This is the time set for status conference today.

Counsel.

MR. CHILDS:  There's a plea agreement on file.  It's my understanding the defendant is ready to plead guilty.

THE COURT:  Let me find out.

Mr. Waknine, is that what you want to do, plead guilty today?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  I will have you move in closer so I can pick you up on the microphone.

THE DEFENDANT:  Good morning.

THE COURT:  Okay.  First of all, let me inform you you have a right to not incriminate yourself.  If you plead guilty you would be incriminating yourself.  So do you give up your right against self-incrimination so you can enter your plea?

THE DEFENDANT:  I do, sir.

THE COURT:  I will have to ask you some questions. I have to make certain findings for the record.

So before I ask you those questions let me place you under oath.

(Defendant sworn.)

THE COURT:  What's your true, legal name?

THE DEFENDANT:  Hai Waknine.  H-A-I  W-A-K-N-I-N-E.

THE COURT:  Do you ever go by any other name?

THE DEFENDANT:  On my Passport, sir, when we came to United States it's spelled O-I-K-N-I-N-E.  Different spelling of the Waknine.

THE COURT:  Other than that you don't go by any other name?

THE DEFENDANT:  No.

THE COURT:  And where do you live?

THE DEFENDANT:  At 5313 Oceanfront Walk in Marina del Rey.

THE COURT:  Your age?

THE DEFENDANT:  38.

THE COURT:  Educational experience.  How much schooling have you had?

THE DEFENDANT:  I completed my GED in federal prison, and I had some college courses before entering prison.

THE COURT:  Okay.

The reason I ask you that is because I have a plea agreement here that consists of about 17 pages that you've signed.

MR. CHILDS:  Your Honor, just for -- the plea agreement, I want to make sure the Court has the right one. I believe it is -- I have a filed version of it that I could hand to the court clerk.

THE COURT:  Is that a different version than what was handed in today?

MR. CHILDS:  This one has the files -- indication of it being filed.  There you go.

THE COURT:  That's okay.  Same thing.

Again, I have asked you these questions about how much education you've had and all.  Because we have a document here that has 17-pages plus three or four pages of attachments to it.  I want to make sure that you've been able to read that document.

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Have you gone over it thoroughly with

your attorney?

THE DEFENDANT:  Many times, Your Honor.

THE COURT:  And do you understand completely that document?

THE DEFENDANT:  As far as the plea goes, yes, Your Honor.

THE COURT:  Because that is one of the findings I have to make, is that you understand what you're doing today obviously.

And do you want to enter into the plea agreement today?

THE DEFENDANT:  Yes.

THE COURT:  Some background questions.

Is there any history in your background of either mental illness or treatment for drug addiction?

THE DEFENDANT:  I have taken some drug courses in the BOP.  RDAP courses, stuff like that.

THE COURT:  Where I'm really going is are you under the influence of any medication, either pain medication, prescription medication, any medication at all that might affect your ability to understand what we're doing here today?

THE DEFENDANT:  To the first -- second question, no. First question, I'm on medication for -- clonidine for my Turrets.  Clonidine is the only medication.

THE COURT:  I'm not worried about that.  As long as

that doesn't affect your ability to understand what we're doing.

THE DEFENDANT:  No, Your Honor.

THE COURT:  As we go through the process if there is anything you don't understand or any questions that you might have, will you please stop me so I can explain it to you?

THE DEFENDANT:  I will.

THE COURT:  Okay.  Thank you.

In this particular matter it's been reported to the Court you wish to enter a plea to Count 8 of the Superseding Indictment.  That alleges a violation of Title 18 of the United States Code Section 1956(h) and 1956(a)(1)(B)(i).

At this time I'm going to have the government state what elements they would have to prove if they went to trial on this matter.  Most of what we're going to be doing today is in the plea agreement.

(Defendant speaks with his counsel.)

THE DEFENDANT:  I'm sorry.  I'm sorry.

THE COURT:  Most of what we're going to be doing today is right in this plea agreement.  For instance, what he's going to be talking about, these elements of the offense are in the plea agreement.  You can read along. It's on page 4.  But I want to make sure that we're all on the same page.

THE DEFENDANT:  Okay.

THE COURT:  Counsel.

MR. CHILDS:  Thank you, Your Honor.

The following must be true:  First, beginning on an unknown date and continuing until on or around November 2003 there was an agreement between two or more persons to engage in a financial transaction involving property that was -- that the conspirators knew represented the proceeds of some form of unlawful activity.  That is the collection of extensions of credit by extortionate means and the conspirators knew the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of said proceeds in violation of Title 18 United States Code Section 1956(a)(1)(B)(i) as charged in the Superseding Indictment; second, that defendant became a member of the conspiracy knowing this object and intending to help accomplish it.  Defendant -- the object of the conspiracy is to commit the violation of Title 18 United States Code Section 1956(a)(1)(B)(i), which has the following elements:  First, defendant conducted or intended to conduct a financial transaction involving property that represented the proceeds of collection of extensions of credit by extortionate means in violation of Title 18 United States Code Section 894; second, the defendant knew that the property represented the proceeds of

collection of extensions of credit by extortionate means in violation of Title 18 United States Code Section 894; third, the defendant knew that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, and control of said proceeds.

This is just a definition:  A financial transaction is a transaction involving:  One, the movement of funds by wire or other means that affect intestate or foreign commerce in any way or number; two, one or more monetary instruments that affect intestate or foreign commerce in any way; three, the use of a financial institution that is engaged in or the activities of which affect intestate or foreign commerce in any way.

THE COURT:  So these are the elements the government would have to prove before they could ever sustain a conviction.  You understand these elements?

THE DEFENDANT:  I do.

THE COURT:  At this time I'm going to have the government -- well, let me ask:  There is an attachment that consists of about four pages here.  This attachment is a factual basis for the plea.

MR. KENNER:  Your Honor, may we have one moment?

THE COURT:  Sure.

(Pause in proceedings.)

THE COURT:  Counsel, the statement of facts is four

pages long.  The two sides are discussing the statement of facts.  Maybe I should take a short recess so that you can go over the statement of facts and see if they can be agreed on.  If so we'll proceed with the plea; if not we've got the trial date set.  Let me know when you're ready.

(Court in recess.)

THE COURT:  Okay.  Have both sides had a chance to talk over the statement of facts?

MR. CHILDS:  Yes.  The parties have stipulated that the statement of facts attached to the defendant's plea agreement that was filed at docket entry 551 will be substituted with the statement of facts that is attached to docket entry number 568, which is the declaration and admissions of the defendant that is attached thereto.  It's Attachment A to the statement of Hai Waknine that was filed in support of the stipulation to continue the trial on or about February 18 of this year.

THE COURT:  Okay.  So let may make sure I understand.  More important, let's make sure Mr. Waknine understands.  I have a five-page document that is attached to a signed document by you that says Statement of Hai Waknine.

Did I pronounce that correctly.

THE DEFENDANT:  Originally it's "Wakneen."  In United States it's Waknine.

THE COURT:  So this five-page document is attached to your signed document here.

Is this the document, Counsel, that you're talking about?

MR. CHILDS:  Yes, Your Honor.  That's correct.

THE COURT:  You agree, sir?

THE DEFENDANT:  I do Your, Honor.

THE COURT:  Now, the statement of facts, those five pages that have been submitted to the Court as Attachment A, have you read over that statement of facts thoroughly?

THE DEFENDANT:  Beyond that, sir.

THE COURT:  Do you admit all facts stated in that statement of facts are true?

THE DEFENDANT:  Yes, sir.  Everything in the attachment I agree with.

THE COURT:  Okay.

MR. CHILDS:  For the record, that is the statement of Hai Waknine that was signed by Defendant Waknine and his counsel, Dave Kenner, on February 17, of this year.

THE COURT:  Yes.

This plea has been brought to the Court under 11(c)(1)(C) which means a binding plea agreement.  Basically, sir, what that means is that both sides have agreed as to what the sentence should be.  The Court may or may not accept that. I have to take a look at the probation reports and all.  If the Court accepts that, it's binding on all parties; if the

Court doesn't accept it, either side can set aside their plea.  Do you understand that?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  Okay.  Counsel, you join?

MR. CHILDS:  Yes, Your Honor.

THE COURT:  Now, let me inform you, though, as to what maximum possible sentence could be under this statute.  This is also in the plea agreement, page 5.  That is that this offense could carry up to a maximum under the statute of 20 years imprisonment, three-year period of supervised release, a fine of $500,000 or twice the gain or loss resulting from the offense, whichever is greatest, and mandatory a special assessment of $100.00.  Do you understand that?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  Also both sides have agreed -- there has been no agreements as to restitution, but there has been agreements as to some aspects of the restitution.  All that is contained on page 6 of the plea agreement.  For instance, as to one of the defendants the restitution has fully been made as to that person?

MR. CHILDS:  One of the victims.

THE COURT:  Yes.

And that there is $275,000 as to one of the victims.  That was set earlier.  Is that correct?  If I have this

correct, that was set earlier by Judge Real, and the understanding it would not go more than that?

MR. CHILDS:  That's correct.

THE DEFENDANT:  Limited to attorneys' fees.  That is what the --

THE COURT:  That's correct.

THE DEFENDANT:  Yes, Your Honor.

MR. CHILDS:  What Judge Real did in the prior case, apparently according to defense counsel, the amount of $275,000 was predicated on $250,000 for attorneys' fees and $25,000 for investigative --

THE COURT:  That is what we have.  That is what Mr. Waknine initialed.

MR. RICHARDS:  The Court should know that that record was vacated by the Ninth Circuit.  I don't want the Court to read into that.  Because there was no --

THE COURT:  I didn't read into anything.  I want to make sure I understand.

MR. RICHARDS:  That was hotly disputed.

THE COURT:  I want to make sure I understand the agreement of the parties.

MR. RICHARDS:  Thank you.

THE COURT:  Now, let me talk to you a little bit -- there is also an indication of what the sentence would be. I want to make sure you understand if you do time in custody

and then you're released on supervision and you violate the terms and conditions of that supervised release, you could be returned to court and do additional time on your violation of supervised release.  Do you understand that?

THE DEFENDANT:  I do.

THE COURT:  If you happen to be on parole, probation, or supervised release in some other matter other than this, a plea in this case could result in a violation of that parole, probation, or supervised release and of course that other court could do whatever they wish on that case independent of what we might do here.  Do you understand that?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  There are certain governmental rights that could be affected by your plea, such as the right to vote, the right serve as a juror, the right to own a firearm, the right to hold public office.  It can affect citizenship in some cases.  It could result in deportation in some cases.  It can affect welfare rights for you, your family, such as food stamps.  All these different governmental rights could be affected by your plea.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  I talked to you earlier about your right against self-incrimination.  Let me go over some other

rights that you have. I'm sure you've discussed them with your attorney. Let me go through them. The most important right you have is the right to be presumed innocent until and unless the government could prove their case to 12 jurors who unanimously would have to agree upon your guilt beyond a reasonable doubt before you could be found guilty. Until and unless they can do that, you've got a right to be presumed innocent. Do you understand that?

THE DEFENDANT: I do.

THE COURT: If you plead guilty you give up that right. Do you understand that?

THE DEFENDANT: I do.

THE COURT: You also have a right to have an attorney at all stages of the proceedings. You have a right to have a public trial. You have a right to have a speedy trial. You have a right to see, hear, cross-examine the witnesses the government would call to prove their case against you. You would have a right to present defenses on your own behalf, subpoena witnesses free of charge to testify for you, using the Court's power to get those witnesses here in court. You would have a right at trial to take the stand and testify on your own behalf if you wish or to remain silent, not take the stand, nobody could draw any adverse inference from the fact you did not testify.

All of these rights you have at trial you would give up

if you plead guilty because there's not going to be a trial. Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  You have discussed all these rights with your attorney.  Is that correct?

THE DEFENDANT:  Yes.

THE COURT:  You understood these rights?

THE DEFENDANT:  I do.

THE COURT:  And you give up these rights?

THE DEFENDANT:  Yes.

THE COURT:  Counsel, joins?

MR. KENNER:  Counsel joins.

MR. RICHARDS:  Join.

THE COURT:  The plea agreement is about 17 pages. You've indicated that you read it, understand it, want to enter into it.  I don't want to go through every single aspect of the plea agreement.  That would take a long time. But basically I want to make sure we understand that the binding plea agreement as far as sentencing -- my understanding is the following:

It would be a level 25 which is a 57- to 71-month range, Category I as far as criminal history is concerned, and the sentence would be a 57 months imprisonment, three-year supervised release conditions to be fixed by the Court, a fine of $100,000 to be paid in ten monthly installments of

$10,000, with the first installment due 30 days after sentencing, a $100.00 special assessment and a restitution to be fixed and paid on a schedule determined by the Court.

Is that the agreed binding plea agreement as far as sentence is concerned by both sides?

MR. CHILDS:  Yes.

MR. KENNER:  Yes.

MR. RICHARDS:  Yes.

THE COURT:  Now, there is also a limited mutual waiver of appeal.  That is, provided the Court imposes a sentence as specified in paragraph 14 that both sides would give up the right to appeal any portion of the sentence.

Is that your understanding, Counsel?

MR. CHILDS:  Yes.

THE COURT:  That is your understanding?

THE DEFENDANT:  I will, Your Honor.

THE COURT:  Without going through everything else in the plea agreement, you said you read it, understand it, are there any questions you have about the plea agreement at this time?

THE DEFENDANT:  No.

THE COURT:  Has anybody made any threats to you or assurances or anything at all to get you to plead -- promised you anything to get you to plead guilty today that we have not either mentioned in court today or that are not

part of this plea agreement?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Then are you pleading and entering into this plea agreement freely and voluntarily because you feel at this time it's in your best interest?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Is there any question you want to ask me before I take your plea?

THE DEFENDANT:  I do not, sir.  Thank you.

THE COURT:  Okay.

Then as to violation of Title 18 of the United States Code Section 1956(h) and 1956(a)(1)(B)(i) how do you now plead, sir; guilty or not guilty?

THE DEFENDANT:  Guilty, Your Honor.

THE COURT:  Counsel, concur in the plea?

MR. CHILDS:  Yes.

MR. KENNER:  Yes.

MR. RICHARDS:  Yes.

THE COURT:  Do you stipulate there is a factual basis to support the plea?

MR. CHILDS:  Yes.

MR. RICHARDS:  Yes.

THE COURT:  The Court finds a knowing, intelligent, free and voluntary waiver on the part of the defendant as to his rights, but finds he has had explained to him the

consequences and possible consequences of his plea.

The Court finds a factual basis based on the stipulation of counsel and also as to the statement of facts that have been submitted by the defendant as Attachment A to the plea agreement.

MR. CHILDS:  Your Honor, it would be Statement of Hai Waknine, signed on February 17, of this year, 2011. That is attached to docket entry 568.

THE COURT:  Yes.  And would incorporate the plea agreement as part of the plea and would accept the plea of guilty.  We'll set it over for sentencing, Counsel, to?

MR. CHILDS:  Government recommends a date in July. We have a restitution hearing that we need to set.

THE COURT:  Let me find out what the Court would recommend.

THE CLERK:  We can go with Monday, July 18 at 10:00 a.m.

MR. RICHARDS:  Do you have any -- can we get a later date than that?  There is -- we need to update his PSR.  We haven't gotten discovery on restitution.  We believe it's zero restitution.

THE COURT:  What are you asking for?

MR. RICHARDS:  Sometime in September.

MR. CHILDS:  Government would object.  This defendant is facing deportation proceedings.  There has been

over 100,000 pages of discovery that has been provided.  The restitution issue has been already argued before.

THE COURT:  Set a date mid-August.

THE CLERK:  How about Monday, August 15 at 10:00 a.m.?

THE COURT:  See you back on that date.

MR. CHILDS:  Could the Court set a hearing on restitution?

MR. RICHARDS:  The problem is we don't know what the -- we haven't gotten -- we don't know --

MR. CHILDS:  We'll file it.

THE COURT:  You can do that later.

MR. KENNER:  I want to call to the attention of the Court that at the time of the stipulation of setting conditions of the bond one of those conditions was that between the time Mr. Waknine might be released from custody, which he has, and the time he actually entered the plea he would be subject to electronic monitoring.  The agreement was that as of the time he entered the plea the requirement of electronic monitoring would be removed.  The Court would order the monitoring removed and the curfew and home confinement conditions removed.

MR. CHILDS:  May I be briefly --

THE COURT:  Yes.

MR. CHILDS:  All of the conditions on the

stipulation concerning the bond and also the Court's order on the bond require the posting of property.  And apparently Magistrate Judge Andrew Wistrich entered an order on February 1 of this year ordering the non-approval of the bond.  So the defendant has, according to this order, not properly posted bond.  In the interim defendant was taken to immigration custody.  It hasn't been an issue.

Now it's an issue.  That is docket entry 559.

THE COURT:  Counsel, let me make a suggestion to you because -- what are you asking for?

MR. CHILDS:  I'm asking that the defendant be ordered to post bond as required -- cure the bond.  Cure the deficiencies in the bond within 24 hours or he has to be remanded.

MR. RICHARDS:  The only issue on the bond was the LLC needed --

THE COURT:  Can he correct it in a couple days?

MR. RICHARDS:  If there is something --

MR. CHILDS:  Okay.

THE COURT:  No problem.

Now, the only problem is I can't take him off electronic monitoring and other conditions until that bond is satisfied.  As soon as that is satisfied, all those things can be taken off.

THE DEFENDANT:  This was never used as a -- we fixed

all that.  He asked for --

MR. RICHARDS:  How would he be released to Immigration without the bond being approved?

THE DEFENDANT:  I signed the waiver to that.  I have no interest in that property --

THE COURT:  Counsel, why don't you -- when you walk out the door, walk over and see if you can get this done right away.  Let's get this taken care of.

MR. KENNER:  We'll have the magistrate signing off on conditions of bond.  That your order would be at that point electronic monitoring and the curfew would be removed?

THE COURT:  Yes.

MR. CHILDS:  The curfew was never to be removed upon the defendant pleading guilty.  The curfew was always to be in place until sentencing.  There's a good reason for that.

MR. RICHARDS:  The electronic monitoring comes with a curfew.  Once you're remove the electronic monitoring -- he's been in custody.  He stayed an extra two months because of this electronic monitoring being thrown in at the end.

THE COURT:  Do we have the original order?

MR. RICHARDS:  He's on a time-served --

THE COURT:  I understand.

MR. RICHARDS:  He's not looking at any more time.

THE COURT:  Was this -- curfew --

MR. CHILDS:  Curfew was negotiated with the defense

counsel stipulation and incorporated in your order, Your Honor.

THE DEFENDANT:  I'm sorry, I have Turrets.

THE COURT:  No problem.

MR. RICHARDS:  Normally when we agree to a curfew it's because electronic monitoring.  The machine has to register the defendant returning home.  He's not facing any more custody time under this plea agreement.  The whole concern of the government was him showing up when he was released from Immigration.  That is what delayed this two months.  We finally released him on Friday.  He's here today as promised.  Once the -- once this -- I don't believe there is a bond issue.  But once this is confirmed there is no bond --

THE COURT:  I'm satisfied once the bond is met and the bond has been established and posted, that -- I don't care at that time about the curfew.

ALL ATTORNEYS IN UNISON:  Thank you, Your Honor.

(Proceedings concluded.)

*   *   *   *   *

C E R T I F I C A T E

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


/S/  Nichole Rhynard, CRR, RMR