ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
J. MARK CHILDS (Cal. Bar No.: 162684)
Assistant United States Attorney
OCDETF Section
    1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2433
    Facsimile: (213) 894-0142
    E-mail:    Mark.Childs@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) No. 04-373(A)-RGK |
|---|---|
| Plaintiff, | ) GOVERNMENT'S SENTENCING |
| v. | ) POSITION FOR DEFENDANT |
|  | ) HAI WAKNINE AND EXHIBITS |
| HAI WAKNINE, | ) |
| Defendant. | ) Hearing Date: 9/12/11 |
|  | ) Hearing Time: 1:30 pm |

Plaintiff United States of America, by and through its counsel of record, Assistant United States Attorney J. MARK CHILDS, hereby files its sentencing position relating to defendant HAI WAKNINE.

The government's position regarding sentencing is based upon the binding plea agreement (pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C)), attached memorandum of points and authorities, exhibits, the files and records in this case, the

///

Presentence Report, and any other evidence or argument that the Court may wish to consider at the time of sentencing.

DATED: August 8, 2011          Respectfully submitted,

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division


            /s/
J. MARK CHILDS
Assistant United States Attorney

Attorneys for Plaintiff
United States of America

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

The government concurs with the base offense level of 24 set forth in the Presentence Investigation Report ("PSR"), as well as the PSR's recommendation for a two level increase because defendant was convicted under 18 U.S. C. § 1956 (U.S.S.G. § 2S1.1(b)(3)), a two-level increase because the money laundering scheme was "sophisticated" within the meaning of U.S.S.G. § 2S1.1(b)(2)(B), and a three-level reduction for acceptance of responsibility.  (PSR at ¶¶ 43 to 54.).  The resulting offense level is 25.

The government acknowledges that the PSR's calculation of defendant's Criminal History score, namely, two criminal history points, is mathematically correct.  (PSR at ¶¶ 56 to 69.). However, the government stands by its position that defendant should be sentenced to a term of imprisonment of 57 months which is consistent with the low-end of the Sentencing Guidelines for total offense level 25 and criminal history category I.  <u>See</u> plea agreement at ¶¶ 13 to 14 filed as Cpurt Docket Entry ("CR") No. 551.

The government believes that such a below Guideline sentence is justified, *inter alia*, because defendant possessed evidence that potentially supported an imperfect duress defense, saved the government inordinate amount of resources by pleading guilty early, and admitted extensive criminal conduct.

The basis of defendant's potential imperfect duress defense was recognized by the Ninth Circuit in its opinion issued for remand (<u>see</u> Exhibit 1, attached hereto) and was recognized in the

1

indictment of <u>United States v. Itzhak Abergil, et al.</u>, United States District Court for the Central District of California, Case No. CR 08-1033-CAS ("<u>Abergil</u> indictment"). <u>See</u> relevant portions of the <u>Abergil</u> indictment, attached hereto as Exhibit 2, Count One, ¶¶ 85, 88, 112, 119, 122 - 129, 135 - 136, 143, 152 - 155 and 158. At the time defendant was engaged in the criminal conduct for which he has now pled guilty, defendant and his brother, Assaf Waknine (who was in Israel), were being extorted by dangerous Israeli mobsters, namely, Itzhak Abergil, Meir Abergil and Gabriel Benharosh. <u>See</u> <u>id.</u>

**II.   FACTUAL BACKGROUND**

   **A.   <u>Procedural History</u>**

On March 25, 2004, defendant was arrested based on a complaint filed in this district and detained and released on bond on June 3, 2004. (PSR, pg. 1).

On December 7, 2004, a federal grand jury in this district returned a 46-count first superseding indictment charging defendant, along with four co-defendants, including co-defendant Gabriel Benharosh, with RICO conspiracy, in violation of 18 U.S.C. § 1962(d)(count one); conspiracy to commit extortion, in violation of 18 U.S.C. § 371; collection of extensions of credit by extortionate means, in violation of 18 U.S.C. § 894; interference with commerce by threats of violence, in violation of 18 U.S.C. § 1951; and money laundering, in violation of 18 U.S.C. §§ 1956, 1957 ("Indictment"). (Court Record Entry Number ("CR") 95).

On June 6, 2006, jury trial commenced against defendant. (CR 254). On June 13, 2006, defendant entered a guilty plea to

count one of the Indictment, pursuant to a non-binding plea agreement that did not credit defendant for acceptance of responsibility and that did not credit the possibility of defendant's imperfect duress defense.  (CR 274).  After a round of appeals, on July 1, 2009, at re-sentencing, Judge Real upward departed from the plea agreement's recommendation of term of 108 months of imprisonment and sentenced defendant to a term of 120 months imprisonment and imposed three years supervised release and a fine of $150,000.  (CR 464).

After a series of appeals, on October 22, 2010, the United States Court of Appeals for the Ninth Circuit ("Ninth Circuit") vacated defendant's guilty plea on the ground that defendant should have the opportunity to present evidence of defendant's duress and remanded the case back to the District Court for reassignment and trial.  See Exhibit 1.

On or about January 17, 2011, the government and defendant entered into a written plea agreement pursuant to Rule 11(c)(1)(C).  (CR 552).

Defendant is on bail.

**B.    Plea Agreement**

The most pertinent terms of the binding plea agreement are as follows: defendant to plead guilty to count eight of the Indictment, alleging a violation of 18 U.S.C. §§ 1956(h), (a)(1)(B)(i); and the Court to impose a term of imprisonment of 57 months, three years supervised release with conditions to be fixed by the Court, a fine of $100,000, and $100 special assessment; and the Court to determine the amount of restitution for extortion victim Viken Keuylian.

3

Defendant has already served, approximately, 55 months in custody.[1] With good time credit, if the Court accepts the plea agreement, defendant will, likely, not serve any additional prison time in this criminal case. As a result of this conviction, defendant will likely be deported from the United States.

**C.    Restitution**

Under the plea agreement, defendant agreed to litigate the restitution amount of extortion victim Viken Keuylian. The amount of restitution imposed by the Court cannot exceed $275,000 (a maximum of $250,000 for attorney's fees and $25,000 for investigation fees). See page 5 of the Plea Agreement; PSR ¶¶ 147 to 150. This amount is consistent with the restitution amount imposed by Judge Real against defendant in the prior proceeding which was subject to an appeal. (CR 345; see Exhibit 5 hereto). Previously, defendant satisfied the claim of another extortion victim, Eliyahu Hadad. (PSR ¶¶ 6, 147 to 150.). The government is not aware of other extortion victims currently seeking restitution.

According to a declaration signed on July 29, 2011 by Mr. Keuylian and provided to the USPO, Mr. Keuylian seeks $275,000 in restitution against defendant. See Exhibit 3.[2] Title 18, U.S.C.

---

[1] The government believes that defendant served approximately two months of jail between the time defendant was arrested (March 25, 2004) and, initially, received bail (June 2, 2004). Thereafter, defendant served, approximately, 55 months of incarceration between the time defendant was remanded by Judge Real into custody (August 10, 2006) and released by this Court (March 10, 2011).

[2] Counsel for Mr. Keuylian will be sent a copy of this position paper.

4

§ 3553(a)(7) requires the Court to consider restitution. However, the Court's final determination of restitution, under certain circumstances, may be imposed up to 90 days after sentencing.  18 U.S.C. § 3664(d)(5) ("[i]f the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the government or the [USPO Officer] shall so inform the Court and the Court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing.").  As clear from Mr. Keuylian's submission for restitution, Exhibit 3, Mr. Keuylian may need additional time, beyond the current sentencing date of September 12, 2011, to recover documents supporting his restitution claim.

Nevertheless, the government will file a separate position paper regarding restitution.

**III. ANALYSIS OF THE SECTION 3553(a) FACTORS**

The government believes that the factors set forth in 18 U.S.C. § 3553(a) would be fulfilled by a sentence of 57 months imprisonment.

**A.   18 U.S.C. §§ 3553(a)(1), (2)**

18 U.S.C. § 3553(a)(1) requires the Court to consider the nature and circumstances of the offense and the history and characteristics of defendant.  18 U.S.C. § 3553(a)(2) requires the Court to consider the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of defendant, and to provide defendant with needed educational or vocational training, medical care, or other

correctional treatment in the most effective manner.

### i. A 57-month Sentence is Appropriate In Light of the Seriousness of This Offense and the Potential Imperfect Duress Sentencing Defense.

Here, the conduct of defendant is serious. Defendant engaged in an extortion and sophisticated money laundering scheme that employed threats of violence against extortion victims, Viken Keuylian and Eliyahu Hadad. (PSR ¶¶ 18 to 33; attachment to Plea Agreement).

In considering the nature and circumstances of the offense, the Court may consider that defendant and his brother were extorted and threatened by Itzhak Abergil, Meir Abergil and Gabriel Benharosh.

In defendant's appellate brief, filed on December 18, 2009, defendant argued that defendant was entitled to present a "duress" defense at trial because defendant was subjected to threats on his life by members of Itzhak Abergil's crime family. See pertinent portions of defendant's opening appellate brief, attached as Exhibit 4. As evidence of defendant's duress defense, in his brief, defendant cited intercepted telephone calls that were summarized in the Abergil indictment. These summaries referenced I. Abergil's knowledge of or participation in the extortion of defendant and defendant's brother,

> . . . while [defendant's] first appeal was pending, [the Abergil] indictment, bearing the same case number as [defendant's] case and charging a number of common defendants with racketeering, extortion, money laundering and drug violations, was filed before Judge Real. (ER 82; CR 403.) A number of wiretapped conversations by the Israeli National Police of the same nature as the Israeli Intercepts later provided to [defendant] provided the basis for the charges in the Abergil Indictment. Not only was the Abergil Indictment replete with claims that Benharosh had

6

threatened to kill people if they did not repay loans and assist in collecting money, it referenced numerous conversations between defendant, Assaf Waknine and others discussing the threats against [defendant] and Assaf Waknine if they did not comply with Benharosh's instructions. (ER 82; CR 403.).  For example, with respect to threats made against [defendant] and his brother Assaf, the [Abergil indictment cites the following conversations]:

- On May 22, 2003, by telephone in Spain, Benharosh told defendant EL-AL that [defendant] promised [d]efendant Itzhak Abergil that defendant would repay the money owed by [defendant] to the enterprise and that [d]efendant Itzhak Abergil should pressure [defendant] to repay the money.

- On May 28, 2003, by telephone in Las Vegas, Nevada, [d]efendant Barashy told [defendant] that [d]efendant Itzhak Abergil had checked his account and spoken with [d]efendant Meir Abergil and that [defendant] still owed $1,350,000.

- On July 14, 2003, by telephone, [d]efendant EL-AL told Benharosh in Spain, that [defendant] would pay $15,000 per month of interest until he returned the $1,000,000 he owed. Benharosh told EL-AL that if defendant did not pay, then their friend, [d]efendant, Itzhak Abergil "would take care of it."

(Exhibit 4, pg. 13 to 14; see also pgs. 4 to 6, 8 to 9).

The government agrees that the above summaries of wiretaps support that I. Abergil and his co-conspirators (including, Benharosh) participated in an extortion scheme against defendant and his brother, as alleged in count one of the Abergil indictment.  See Abergil indictment, attached hereto as exhibit 2, at Count One, ¶¶ 85, 88, 112, 119, 122 - 129, 135 - 136, 143, 152 - 155 and 158.

Thus, the nature and circumstances of this offense – specifically, the threats used by defendant against extortion victims and the threats leveled against defendant by powerful mafia figures – warrant, on balance, a Guidelines sentence of 57 months.

7

**ii.   A 57-month Sentence is Needed to Deter This Criminal Activity**

The sentence is justified as a deterrent.  Under section 3553(a) the Court must consider the need for the sentence to adequately deter future crime.  Defendant played an integral role in facilitating the extortion and money laundering scheme. Thus, a significant penalty, here 57 months, is needed to deter defendant from committing this crime again.

A conviction for this crime and a sentence of 57 months will likely result in defendant being deported from the United States which will act as a further deterrent.

**iii. A 57-month Sentence is Also Appropriate Based on the Particular Circumstances Surrounding Defendant's Crime**

A 57-month sentence is also appropriate in light of the nature and circumstances of this crime and the history and characteristics of the defendant.

First, defendant was one of the driving forces behind the extortion and money laundering scheme.  Not surprisingly, defendant was a trusted associate of serious Israeli mobsters, such as, Gabriel Benharosh, who was one of the ringleaders of the scheme.

Second, defendant himself delivered some of the verbal threats to extortion victims Viken Keuylian and Eliyahu Hadad.

In slight mitigation, none of the extortion victims were physically harmed.

However, a 57-month sentence is also reasonable in light of other factors.  Defendant saved the government an inordinate

8

amount of resources by pleading guilty early in this case.  If defendant went to trial, the government would have had to bring witnesses to testify from Israel, other foreign countries and across the United States.  Moreover, the government will be required to bring these same witnesses to testify in a trial on counts related to the Waknine case scheduled to begin on or about July 31, 2012 in the matter of U.S. v. Itzhak Abergil, et al., No. CR 08-1033-CAS.  Thus, if defendant had not pled guilty, the government would have had to expend an enormous amount of resources for two trials utilizing similar proof, namely, the trials on the Waknine case and the Abergil case.

**B.    18 U.S.C. § 3553(a)(6)**

18 U.S.C. § 3553(a)(6) requires the Court to minimize sentencing disparity among similarly situated defendants.  If the Court agrees to be bound by the plea agreement, defendant will have served the most time of incarceration of all defendants sentenced, to date, in this case.

Defendant Gabriel Benharosh, who was sentenced to a term of five years probation by Judge Real, is similar to defendant in offense conduct but is dissimilar in post-offense conduct. Benharosh cooperated extensively with the government and testified at trial against Waknine.  Thanh Nguyen, who received a sentence of five years probation from Judge Real, is dissimilar to defendant in that defendant directly threatened extortion victims and Thanh Nguyen was a low-level player who took orders from other co-conspirators.  See PSR at ¶ 15.

**C.    THE REMAINING 3553(a) FACTORS**

Title 18, U.S.C. § 3553(a)(3) requires the Court to consider

the kinds of sentences available.  Incarceration is appropriate given the nature, length and complexity of defendant's offense.

Title 18, U.S.C. § 3553(a)(4) & (5) now merely require the Court to take the Sentencing Guidelines as "advisory." Nevertheless, for the reasons stated above, a slightly below Guidelines sentence is appropriate here.

**IV.   CONCLUSION**

For the foregoing reasons, the factors set forth in 18 U.S.C. § 3553(a) support the imposition of a 57-month term of imprisonment, a three-year term of supervised release, a fine of $100,000, and restitution to be fixed and paid as determined by the Court, consistent with the plea agreement.

DATED: August 8, 2011                Respectfully submitted,

                                     ANDRÉ BIROTTE JR.
                                     United States Attorney

                                     ROBERT E. DUGDALE
                                     Assistant United States Attorney
                                     Chief, Criminal Division


                                       /s/
                                     J. MARK CHILDS
                                     Assistant United States Attorney
                                     OCDETF Section

                                     Attorneys for Plaintiff
                                     United States of America

10