# EXHIBIT A



## Vehicle Purchase & Sales Agreement

The following sets forth the terms of purchase and sales agreement of exotic vehicles ("Agreement") between the undersigned ("Exclusive, Inc.") located at 5860 S. Valley View Boulevard, Las Vegas, Nevada, and ("Mr. Gabriel Ben-Harosh") an individual with an address of 550 South Hill Street, Suite 702, Los Angeles, CA 90013.

Subject, to the limitations and terms set forth in this agreement:

## AGREEMENT

1. **Transfer of Funds.** Mr. Gabriel Bren-Harosh has transferred funds for the amount of $950,000.00 payable to Exclusive, Inc. Funds were received as follows:
$500,000.00 by check, dated May 10, 2002, check # 38765 was made to Exclusive, Inc. The balance of 450,000.000 was wire transferred to Exclusive, Inc.'s account on May 22, 2002.

2. **Purpose of Fund Transfer:** To enter into the "Agreement"

3. **Scope of Vehicle Purchase and Sales Agreement.** Exclusive, Inc. and Mr. Gabriel Bren-Harosh will partner in the purchase and sale of the following six vehicles:

| VEHICLE TYPE | VIN # |
|---|---|
| Ferrari Spider F1 | 121871 |
| Ferrari 550 Barchetta | 124070 |
| Ferrari F1 Spyder | 124527 |
| Ferrari Spyder | 125357 |
| Ferrari Spyder | 125350 |
| Ferrari F1 Spyder | 125477 |

4. The abovementioned vehicles will be purchased by Exclusive, Inc. and imported into the U.S. When the sale of each vehicle is completed and after complete consideration of all expenses incurred by Exclusive, Inc. in relation to the purchase and importation to the U.S. of each of the above vehicles, the net profits from the sale of each of the vehicles will be divided evenly between the two parties entering this agreement.

    a. <u>Entire Agreement; Miscellaneous.</u> This Agreement constitutes the entire agreement of the parties with respect to the subject matter hereof and supersedes all prior negotiations, understandings and agreements between Exclusive, Inc. and Mr. Gabriel Ben-Harosh, and both parties acknowledge and agree that neither party has relied on any representations or promises in connection with this Agreement not contained in this

046579

②

Agreement. This Agreement may not be changed, modified, renewed, extended, cancelled or discharged, or any covenant or provision waived, except by an agreement in writing signed by the party against whom enforcement of the change, modification, renewal, extension, discharge or waiver is sought. If any provisions of this Agreement are held to be void or unenforceable, all other provisions of this Agreement shall continue in full force and effect.

In witness whereof the parties have executed this Agreement as of the 15 day of ___Sep___, 2002.

EXCLUSIVE, INC.
a Nevada Corporation

By: _____
Vik Keuylian, President

GABRIEL BEN-HAROSH
An Individual

By: _____
Mr. Gabriel Ben-Harosh

HAI WAKIM.

For GABRIEL BEN-HAROSH

046580

Wednesday, May 07, 2003

### RECEIPT FOR CASHIER'S CHECK

By signing below, 1 agree to receive on behalf of Gabriel Harroch, a.k.a. Gabirel Ben
Harroch, a.k.a. Gabriel Ben-Harush, a cashier's check made payable to him in the amount
of $44,988.00.

Said sum is being disbursed to him pursuant to the settlement between Vik Keuylian and
the Harosh parties dated April 28, 2003.

I relieve Gordon Reid Wallack, A Law Corporation, and Gordon Reid Wallack
individually, of any and all responsibility relative to this check.


___5/7/2003___                              
Date                                        Hai Waknine

Gordon Reid Wallack, A Law Corporation
15760 Ventura Boulevard, 7th Floor
Encino, California 91436
Voice (818) 995-9415 / New Facsimile (818) 905-7705
GORDON@WALLACK.ORG

046581

# EXHIBIT B

**STATE OF CALIFORNIA**

17602091908   **CERTIFICATE OF TITLE**

| AUTOMOBILE | TITLE ONLY | | *** NON USA *** |
|---|---|---|---|

| VEHICLE ID NUMBER | YR MODEL | MAKE | PLATE NUMBER |
|---|---|---|---|
| SAJJEAEX8AX220795 | 1993 | JAGU | 22CI515 |

| BODY TYPE MODEL | AX | UNLADEN WEIGHT | FUEL | TRANSFER DATE | FEES PAID | REGISTRATION EXPIRATION DATE |
|---|---|---|---|---|---|---|
| 2D | | | G | | $20 | 04/18/2001 |

| YR 1ST SOLD | CLASS | YR | MO | EQUIPMT/TRUST NUMBER | ISSUE DATE |
|---|---|---|---|---|---|
| | MA | 2000 | HW | | 09/29/02 |

| MOTORCYCLE ENGINE NUMBER | ODOMETER DATE | ODOMETER READING |
|---|---|---|
| | 04/17/2001 | 1025 KM |
| | ACTUAL MILEAGE | |

REGISTERED OWNER(S)
KEUYLIAN VIK
5860 S VALLEY VIEW BLVD
LAS VEGAS
NV 89118

I certify under penalty of perjury under the laws of the State of California, that **THE SIGNATURE(S) BELOW RELEASES INTEREST IN THE VEHICLE.**

1a. _____ DATE   X _____ SIGNATURE OF REGISTERED OWNER

1b. _____ DATE   X _____ SIGNATURE OF REGISTERED OWNER

Federal and State law requires that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

The odometer now reads |__|__|__|.|__|__|__| (no tenths), miles and to the best of my knowledge reflects the actual mileage unless one of the following statements is checked.

**WARNING**   ☐ Odometer reading is not the actual mileage.   ☐ Mileage exceeds the odometer mechanical limits.

*I certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

| DATE | TRANSFEROR/SELLER SIGNATURE(S) | DATE | TRANSFEREE/BUYER SIGNATURE(S) |
|---|---|---|---|
| | X | | X |
| PRINTED NAME OF AGENT SIGNING FOR A COMPANY | | PRINTED NAME OF AGENT SIGNING FOR A COMPANY | |

**IMPORTANT READ CAREFULLY**
Any change of Lienholder (holder of security interest) must be reported to the Department of Motor Vehicles within 10 days.
LIENHOLDER(S)

KEUYLIAN MOTORCARS
9022 WILSHIRE BLVD
BEVERLY HILLS CA 90211

2. X _____
Signature releases interest in vehicle. (Company names must be countersigned)
Release Date _____

027234   CA 65807903   REV. 17.30 (REV.2/02)

KEEP IN A SAFE PLACE — VOID IF ALTERED

*gave us as Colletoral*

046557

# STATE OF CALIFORNIA
## CERTIFICATE OF TITLE

17602030406

| AUTOMOBILE | TITLE ONLY | *** NON USA *** |
|---|---|---|

| VEHICLE ID NUMBER | YR MODEL | MAKE | PLATE NUMBER |
|---|---|---|---|
| WPOZZZ95ZJS900158 | 1988 | PORS | 2QCI262 |

| BODY TYPE MODEL | AX | UNLADEN WEIGHT | FUEL | TRANSFER DATE | FEES PAID | REGISTRATION EXPIRATION DATE |
|---|---|---|---|---|---|---|
| 2D | | | G | | *20 | 01/08/2002 |

| YR 1ST SOLD | CLASS | YR | MO | EQUIPMT/TRUST NUMBER | ISSUE DATE |
|---|---|---|---|---|---|
| | MA | 2001 | HP | | 03/14/02 |

MOTORCYCLE ENGINE NUMBER /

ODOMETER DATE 01/03/2002    ODOMETER READING 5118 KM
ACTUAL MILEAGE

REGISTERED OWNER(S)
KEUYLIAN VIC
18547 SANTA RAMONA
FOUNTAIN VLY CA 92708

- - - - -
- - - - -

I certify under penalty of perjury under the laws of the State of California, that THE SIGNATURE(S) BELOW RELEASES INTEREST IN THE VEHICLE.

1a. _____ X _____
DATE                    SIGNATURE OF REGISTERED OWNER

1b. _____ X _____
DATE                    SIGNATURE OF REGISTERED OWNER

Federal and State law requires that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

The odometer now reads |__|__|__|,|__|__|__| (no tenths), miles and to the best of my knowledge reflects the actual mileage unless one of the following statements is checked.

WARNING    ☐ Odometer reading is not the actual mileage. ☐ Mileage exceeds the odometer mechanical limits.

I certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

| DATE | TRANSFEROR/SELLER SIGNATURE(S) | DATE | TRANSFEREE/BUYER SIGNATURE(S) |
|---|---|---|---|
| | X | | X |
| PRINTED NAME OF AGENT SIGNING FOR A COMPANY | | PRINTED NAME OF AGENT SIGNING FOR A COMPANY | |

### IMPORTANT READ CAREFULLY
Any change of Lienholder (holder of security interest) must be reported to the Department of Motor Vehicles within 10 days.

LIENHOLDER(S)

KEUYLIAN MOTORCARS
9022 WILSHIRE BLVD
BEVERLY HILLS CA 90211

2. X _____
Signature releases interest in vehicle. (Company names must be countersigned)
Release Date _____

031604    CA60749743
REG. 17.30 (REV. 2/98)

KEEP IN A SAFE PLACE — VOID IF ALTERED

046558

# STATE OF CALIFORNIA
## CERTIFICATE OF TITLE

17602091108

AUTOMOBILE    TITLE ONLY    *** NON USA ***

| | | |
|---|---|---|
| VEHICLE ID NUMBER | YR MODEL MAKE | PLATE NUMBER |
| WP0ZZZ95ZHS900037 | 1987 PORS | 2QCI516 |

| BODY TYPE MODEL | AX UNLADEN WEIGHT | FUEL | TRANSFER DATE | FEES PAID | REGISTRATION EXPIRATION DATE |
|---|---|---|---|---|---|
| 2D | | G | | $20 | 06/26/2001 |

| YR 1ST SOLD | CLASS | YR | MO | EQUIPMT/TRUST NUMBER | ISSUE DATE |
|---|---|---|---|---|---|
| | MA | 2001 | HW | | 09/21/02 |

MOTORCYCLE ENGINE NUMBER

ODOMETER DATE  06/24/2001
ODOMETER READING  20926 MI
ACTUAL MILEAGE

REGISTERED OWNER(S)
KEUYLIAN NORA
18547 SANTA RAMONA
FOUNTAIN VLY CA 92708

I certify under penalty of perjury under the laws of the State of California, that THE SIGNATURE(S) BELOW RELEASES INTEREST IN THE VEHICLE.

1a. _____ X _____
     DATE                  SIGNATURE OF REGISTERED OWNER

1b. _____ X _____
     DATE                  SIGNATURE OF REGISTERED OWNER

Federal and State law requires that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment

The odometer now reads |__|__|__|,|__|__|__| (no tenths), miles and to the best of my knowledge reflects the actual mileage unless one of the following statements is checked.

WARNING    ☐ Odometer reading is not the actual mileage.  ☐ Mileage exceeds the odometer mechanical limits.

I certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

| DATE | TRANSFEROR/SELLER SIGNATURE(S) | DATE | TRANSFEREE/BUYER SIGNATURE(S) |
|---|---|---|---|
| | X | | X |
| PRINTED NAME OF AGENT SIGNING FOR A COMPANY | | PRINTED NAME OF AGENT SIGNING FOR A COMPANY | |

## IMPORTANT READ CAREFULLY

Any change of Lienholder (holder of security interest) must be reported to the Department of Motor Vehicles within 10 days.

LIENHOLDER(S)

KEUYLIAN MOTORCARS
9022 WILSHIRE BLVD
BEVERLY HILLS CA 90211

2. X _____
   Signature releases interest in vehicle. (Company names must be countersigned)
   Release Date _____

CA 65633727

026432    REV. 17.30 (REV.2/02)

KEEP IN A SAFE PLACE — VOID IF ALTERED

17602042501

# CERTIFICATE OF TITLE

**AUTOMOBILE**   '   **TITLE ONLY**                 *** NON USA ***

| VEHICLE ID NUMBER | YR MODEL | MAKE | PLATE NUMBER |
|---|---|---|---|
| SAJJEAEX8AX220651 | 1994 | JAGUA | 2QCI317 |

| BODY TYPE MODEL | AX | UNLADEN WEIGHT | FUEL | TRANSFER DATE | FEES PAID | REGISTRATION EXPIRATION DATE |
|---|---|---|---|---|---|---|
| 2D | | | G | | $20 | 06/22/2001 |

| YR 1ST SOLD | CLASS | "YR | MO | EQUIPMT/TRUST NUMBER | ISSUE DATE |
|---|---|---|---|---|---|
| | MA | 2000 | HS | | 05/05/02 |

MOTORCYCLE ENGINE NUMBER

| ODOMETER DATE | ODOMETER READING |
|---|---|
| 06/21/2001 | 511 KM |

ACTUAL MILEAGE

REGISTERED OWNER(S)
KEUYLIAN ASDGHIG
18547 SANTA RAMONA
FOUNTAIN VLY CA 92708

I certify under penalty of perjury under the laws of the State of California, that THE SIGNATURE(S) BELOW RELEASES INTEREST IN THE VEHICLE.

1a. _____  X _____
        DATE              SIGNATURE OF REGISTERED OWNER

1b. _____  X _____
        DATE              SIGNATURE OF REGISTERED OWNER

Federal and State law requires that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

The odometer now reads |__|__|__| , |__|__|__| (no tenths), miles and to the best of my knowledge reflects the actual mileage unless one of the following statements is checked.

WARNING    ☐ Odometer reading is not the actual mileage.  ☐ Mileage exceeds the odometer mechanical limits.

*I certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

| DATE | TRANSFEROR/SELLER SIGNATURE(S) | DATE | TRANSFEREE/BUYER SIGNATURE(S) |
|---|---|---|---|
| | X | | X |
| PRINTED NAME OF AGENT SIGNING FOR A COMPANY | | PRINTED NAME OF AGENT SIGNING FOR A COMPANY | |

### IMPORTANT READ CAREFULLY

Any change of Lienholder (holder of security interest) must be reported to the Department of Motor Vehicles within 10 days.

LIENHOLDER(S)

KEUYLIAN MOTOR CARS
9022 WILSHIRE BLVD
BEVERLY HILLS CA 90211

2. X _____
Signature releases interest in vehicle. (Company names must be countersigned)
Release Date _____

CA 61976147

025276    REG. 17.30 (REV. 2/98)

KEEP IN A SAFE PLACE — VOID IF ALTERED

046560

STATE OF CALIFORNIA

**CERTIFICATE OF TITLE**

17602091108

| AUTOMOBILE | TITLE ONLY | | | *** NON USA *** |
|---|---|---|---|---|

| VEHICLE ID NUMBER | | YR MODEL | MAKE | PLATE NUMBER |
|---|---|---|---|---|
| SAJJEAEX8AX220632 | | 1994 | JAGUA | 20CIS18 |

| BODY TYPE MODEL | AX UNLADEN WEIGHT | FUEL | TRANSFER DATE | FEES PAID | REGISTRATION EXPIRATION DATE |
|---|---|---|---|---|---|
| 2D | | G | | $20 | 02/10/2002 |

| | YR 1ST SOLD | CLASS | *YR | MO | EQUIPMT/TRUST NUMBER | ISSUE DATE |
|---|---|---|---|---|---|---|
| | | MA | 2000 | HW | | 09/21/02 |

| MOTORCYCLE ENGINE NUMBER | ODOMETER DATE | ODOMETER READING |
|---|---|---|
| | 02/08/2002 | 7195 MI |
| | ACTUAL MILEAGE | |

REGISTERED OWNER(S)
EDWARDS JOY
27641 FARGO RD
LAGUNA HILLS CA 92653

I certify under penalty of perjury under the laws of the State of California, that THE SIGNATURE(S) BELOW RELEASES INTEREST IN THE VEHICLE.

1a. _____  X _____
    DATE                SIGNATURE OF REGISTERED OWNER

1b. _____  X _____
    DATE                SIGNATURE OF REGISTERED OWNER

Federal and State law requires that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

The odometer now reads |__|__|__| , |__|__|__| (no tenths), miles and to the best of my knowledge reflects the actual mileage unless one of the following statements is checked.

WARNING    ☐ Odometer reading is not the actual mileage    ☐ Mileage exceeds the odometer mechanical limits.

I certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

| DATE | TRANSFEROR/SELLER SIGNATURE(S) | DATE | TRANSFEREE/BUYER SIGNATURE(S) |
|---|---|---|---|
| | X | | X |
| PRINTED NAME OF AGENT SIGNING FOR A COMPANY | | PRINTED NAME OF AGENT SIGNING FOR A COMPANY | |

**IMPORTANT READ CAREFULLY**

Any change of Lienholder (holder of security interest) must be reported to the Department of Motor Vehicles within 10 days.

LIENHOLDER(S)

KEUYLIAN MOTORCARS
9022 WILSHIRE BLVD
BEVERLY HILLS CA 90211

2. X _____
   Signature releases interest in vehicle. (Company names must be countersigned)
   Release Date _____

026435    CA 65633730

REV. 17.30 (REV 2/02)

KEEP IN A SAFE PLACE — VOID IF ALTERED

046561

# EXHIBIT C

# SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE

This Settlement Agreement and Mutual Release ("Agreement"), is made and entered into by and between, on the one hand, Vik Keuylian, an individual ("Keuylian,"), having an address of 9022 Wilshire Blvd, Beverly Hills, CA 90211, and, on the other hand, Gabriel Ben-Haroch, an individual, Amir Haroch, an individual and Hai Waknine, an individual (collectively, "Haroch Parties"), having an address of 550 South Hill Street, Suite 702, Los Angeles, CA 90013, effective as of April 28, 2003, with reference to the following facts:

## RECITALS

A.    Prior to the date hereof, the Haroch Parties advanced to Exclusive Inc. a Nevada corporation ("Exclusive") the sum of $950,000.00 (the "Advance") in connection with a joint business venture, in which Exclusive would sell six Ferrari automobiles, and in which Exclusive and the Haroch Parties would share equally in the net profits (the "Venture"). The Venture, however, did not result in any net profits.

B.    As shown on Exhibit "A" attached hereto and incorporated herein by this reference, Exclusive and Keuylian (collectively, the "Exclusive Parties") have repaid $324,348.00 of the Advance, and incurred additional charges in the amount of $27,200, resulting in a total balance due of $652,852.00.

C.    The Exclusive Parties and the Haroch Parties now wish to resolve all matters between the matter parties by payment of the balance owing and to grant each other mutual general releases with respect thereto and to all other claims.

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing recitals and the mutual covenants and benefits contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.    **Settlement Closing; Payment.** Concurrently with the execution and delivery of this Agreement by all parties, the Exclusive Parties shall deliver to the Haroch Parties by wire transfer to the trust account of Gordon R. Wallack (as shown on Exhibit "B" attached hereto), attorney to the Haroch Parties, the sum of $652,852.00 (the "Settlement Payment"). In addition to the foregoing, Exclusive shall pay wire to the foregoing account the sum of $48,000, within fifteen (15) days after the date of this Agreement, which shall constitute payment in full for a 2001 Mercedes Benz G500 sold to, and subsequently returned to Exclusive by, Hai Waknine.

2.    **Release of Claims.** Effective upon receipt by Gordon Wallack of the wire transfer of the Settlement Payment (as confirmed by the initiating bank's confirmation), each of the Haroch Parties and the Exclusive Parties (each, a "Releasor"), on each of their own behalf and on behalf of their respective representatives, agents, employees, principals, servants, attorneys, officers, directors, partners, members, affiliates, predecessors in interest, successors, assigns, heirs and personal representatives and all other entities and persons claiming rights by or through it, hereby acquits, releases and discharges the other party (the "Released Party") and each of the Released Party's representatives, agents, employees, principals, servants, attorneys, officers, directors, partners, members, affiliates, predecessors in interest, successors, assigns, heirs and personal representatives and all other entities and persons claiming rights by or through the Released Party, of and from any and all claims, demands, obligations, liabilities, indebtedness, breaches of representations, breaches of warranty, breaches of contract, breaches of any duty or any relationship, acts, omissions, misfeasance, malfeasance, manner of actions and causes of action, suits, rights, damages, losses, debts, costs, expenses and attorneys' and other fees whatsoever, in law or in equity (collectively "Claims"), which the Releasor ever had or may now have, liquidated or unliquidated, relating to or arising out of the Advance or the Venture, and/or any and all other matters between the parties, with the exception of the obligations arising out of this Agreement.

3.    **No Admission of Liability.** Each of the parties acknowledges that this Agreement effects the settlement of disputed Claims and neither the payment of any consideration nor anything contained in this Agreement shall be construed as an admission of liability or a concession on the part of any party hereto.

4.    **Full Acknowledgment of Rights.** The undersigned warrant, represent and agree that in executing this Agreement, they do so freely and voluntarily with the full knowledge of any and all rights which they might have. The undersigned further acknowledge and represent that they have read this Agreement, and each and every part thereof, and that they have had the opportunity to consult with attorneys with respect thereto. Each person executing this Agreement warrants and represents that he or she has the full authority to execute, deliver and perform this Agreement on behalf of the party to be bound. If any Releasor hereafter asserts in a proceeding that its release of a Released Party is not effective, then all releases in favor of such Releasor shall be null and void. The obligations of the individuals or entities comprising a party shall be joint and several, such that each of such parties shall be fully and personally liable for any breach of this Agreement by any of them. Without limiting the generality of the foregoing, each Releasor represents and warrants that no person or entity affiliated in any manner with the transaction referenced in this Agreement has any cause of action or claim against each Released Party in connection with such transaction, which claim not is not released hereby.

F:\USERS\DMD\WP\RJSC\Settlement\d-c.doc                                                      Page 1

5. **General Release.** By the releases set forth in Section 2 above, each Releasor intends to release the Released Party from all unknown and unanticipated Claims, if there be any, relating to the matters described therein, and in signing this Agreement has not relied upon any representation made by any person or party, or the agent of any person or party hereby released. Each party hereto understands that it may have suffered damages that are unknown, that the potential for such unknown damages was discussed during the course of negotiations leading to this Agreement, and the terms of the Agreement were determined with due regard for such possibility. Each party expressly and knowingly waives, now and forever, each and every right, privilege, protection, and benefit afforded by state or federal law providing, in substance, that a general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release. Each party, by and through its authorized representatives, expressly acknowledges and agrees that it has read, understood and hereby waives any and all rights under Section 1542 of the Civil Code of the State of California, which provides as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

The parties voluntarily waive the provisions of said Section 1542 and acknowledge and agree that this waiver is an essential and material term of the Agreement and the release provisions contained herein, and that without such waiver, this Agreement and this release would not have been entered into. Both parties understand and acknowledge the significance and consequences of the release of claims as defined herein and agree to the specified waiver of Section 1542, and all other comparable provisions of applicable law.

6. **Right to Settle.** Each party represents and warrants that it has not collectively or individually assigned, transferred or hypothecated to have assigned or transferred, or will in the future assign, transfer or hypothecate to assign or transfer to any person or entity, any debt, judgment, claim, liability, demand, action, cause of action or any interest therein, based on, connected with or deriving from the Advance or the Venture and that such party is the sole and rightful owner of its respective claims and/or rights which are the subject of this Agreement.

7. **Sale of Vehicles Held Pursuant to Venture.** Pursuant to the Venture, Exclusive purchased, and is marketing for sale (or has sold) the following six vehicles (the "Vehicles"):

| VEHICLE TYPE | VIN # |
| --- | --- |
| Ferrari Spider F1 | 121871 |
| Ferrari 550 Barchetta | 124070 |
| Ferrari F1 Spyder | 124527 |
| Ferrari Spyder | 125257 |
| Ferrari Spyder | 125350 |
| Ferrari F1 Spyder | 125477 |



Upon the completion of the sale of all of the Vehicles, and after deduction for all costs and expenses incurred by Exclusive and/or Kraghim in connection with the acquisition, maintenance and sale of the Vehicles (including without limitation costs of purchase, importation to the U.S., licensing, accessory, maintenance and sales costs) of all of the Vehicles, the total net profits from the sale of the Vehicles will be divided evenly between Exclusive and Gabriel Ben-Harosh. In the event Exclusive receives a trade-in vehicle in connection with any of the sales, such trade-in shall be deemed a "Vehicle," and shall be subject to the provisions of the previous sentence.

8. **No Inducement.** Each party declares and represents that in entering into this Agreement, it has not relied on any promise, inducement or agreement other than those stated expressly herein.

~~8~~ 9. **Attorneys' Fees and Costs.** Each of the parties is to bear its own attorneys' fees and costs in connection with this Agreement. However, should any party hereto commence or maintain any action or proceeding at law or in equity, including motions, applications, counterclaims or cross-complaints, against any other party hereto in connection with this Agreement, including any litigation, arbitration, bankruptcy and appellate proceedings, the prevailing party shall be entitled to recover from the non-prevailing party all of its attorneys' fees and costs reasonably incurred by the prevailing party (including the allocated costs of in-house counsel of any party) in connection therewith, and all reasonable attorneys' fees and costs resulting from efforts to collect any amounts due. For purposes of this Agreement, the "prevailing party" shall be deemed to be the party obtaining the net monetary judgment, or, if there is no net monetary judgment, the party obtaining the greater relief, in light of all the facts and circumstances, and taking into account all claims asserted and all relief and all damages sought.

~~9~~ 10. **Confidentiality.** The parties hereby agree, as a material part of the consideration hereunder, not to communicate with any third party regarding the Advance, the Venture or this Agreement, including the existence or amount of the settlement payment or the contentions of the parties in connection herewith, other than to accountants and attorneys as necessary in the ordinary course of business, and otherwise only if and to the extent required by



law. The parties agree and acknowledge that any disclosure could cause significant and irreparable injury to the other parties, and that damages would be inadequate to remedy any unauthorized disclosure of information. As a result, any party receiving notice of a potential disclosure may obtain equitable relief, including injunctive relief (by ex parte or noticed motion) and specific performance, to enforce this Agreement. In addition to the foregoing, each party agrees to indemnify and hold the other parties harmless from and against any and all claims or damages, including without limitation attorneys' fees, resulting from a breach of this Section 9 and/or from its or its agents' or employees' breach of the foregoing. The provisions of this Section 9 shall survive the termination of this Agreement.

## ~10~ 11. Miscellaneous.

a. **Choice of Law.** Under this Agreement, any and all rights and duties set forth herein, including matters of construction, validity and performance, shall be interpreted and enforced and governed solely by the laws of the State of California.

b. **Interpretation.** The parties hereto agree that their counsel have both reviewed and contributed to the language and format of this Agreement, and that they have entered into this Agreement after the opportunity for the advice and consent of independent legal counsel. Therefore, no party shall be considered the drafter of this Agreement, and any construction or presumption against the drafter in the interpretation of this Agreement shall not be applied for or against any party. Further, each party agrees that no other party or any agent of any other party has made any representations or warranties to it express or implied, except as set forth herein, that it has relied upon in entering into this Agreement.

c. **Construction of Language.** The enumeration of certain particulars as included within the general language shall not restrict the scope or affect the generality of such language, and except as expressly otherwise provided herein, the term "include" shall mean "include, but shall not be limited to" and the term "including" shall mean "including, without limitation." All the terms and words used in this Agreement, regardless of the number and gender in which they are used, shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine, or neuter, as the context or sense of this Agreement or any paragraph or clause herein may require, the same as if such word had been fully and properly written in the correct number and gender. All notices, demands, consents, approvals and other communications given pursuant to this Agreement must be in writing and must be sent by hand, or by telecopy (with a duplicate copy sent by ordinary mail, postage prepaid), or by certified or registered mail, postage prepaid, return receipt requested, or by reputable overnight courier service, postage prepaid, addressed to the party to be notified as set forth above.

d. **Counterparts.** This Agreement may be executed in counterparts, and each counterpart shall be deemed to be a duplicate original of the Agreement. All such counterparts together shall constitute one agreement to be effective on the date fully executed by all parties.

e. **Severability.** If any provision of the Agreement is held to be a violation of federal or state law, that provision may be severed from the Agreement, and the remaining provisions of the Agreement shall remain in force.

f. **Captions and Headings.** The paragraph headings contained herein are for the purpose of convenience and are not intended to define or limit the contents of the paragraphs or the Agreement. The Recitals are hereby incorporated into this Agreement by reference and made a part of this Agreement.

g. **Entire Agreement; Successors and Assigns.** Any amendment to this Agreement must be in a writing signed by duly authorized representatives of the parties hereto and stating the intent of the parties to amend this Agreement. This Agreement contains the entire understanding between the parties relating to the settlement contemplated by this Agreement. All prior or contemporaneous agreements, understandings, representations and statements, whether direct or indirect, oral or written, are merged into and superseded by this Agreement, and shall be of no further force or effect. This Agreement shall be binding upon and shall inure to the benefit of the parties and their respective successors and assigns.

h. **Further Cooperation.** The parties agree to execute and deliver such other instruments and perform such acts, in addition to the matters herein specified, as may be appropriate or necessary, from time to time, to effectuate the agreements and understandings of the parties, whether the same occurs before or after the date of this Agreement.

[SIGNATURE PAGE TO FOLLOW]

F:\USERS\DMD\WP\BLSC\Settlement1d-c.doc

Page 3

30-APR-2003 00:28 DE-ROYAL PROPERTIES 0034952373352 H:145-004181854571A5

ent By: Gordon Reid Wallack, )) Co ; 818 905 7705; Apr ) 2:44PM;

04-29-2003 01:06PM FROM-CROUDACE & DIETRICH 849-784-8801 T-354 P.005/008 F-820

IN WITNESS WHEREOF, the parties hereto have executed this Agreement to be effective as of the date first set forth above.

EXCLUSIVE, INC.
a Nevada corporation

By: _____
Vik Keoylian, President

Vik Keoylian
_____
Gabriel Ben-Haroch

_____
Amir Haroch

_____
Hal Waknine

SEE ATTACHED NOTARIES



F:\USERS\DMD\WP\BISC\Scrdconsstl6-c.doc                                    Page 4

STATE OF _____ )
                                              )SS.
COUNTY OF _____ )

On _____, 2003, before me, _____, a Notary Public in and for said State, personally appeared _____ personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

       WITNESS my hand and official seal.

_____
Notary Public in and for said State

       (Seal)

STATE OF _____ )
                                              )SS.
COUNTY OF _____ )

On _____, 2003, before me, _____, a Notary Public in and for said State, personally appeared _____ personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

       WITNESS my hand and official seal.

_____
Notary Public in and for said State

       (Seal)

# EXHIBIT D

# "EXHIBIT A"
## ACCOUNTING
### APRIL 25, 2003

| | | | |
|---|---|---|---|
| | FUNDS RECEIVED FROM BEN HAROSH | $ | 950,000.00 |
| | | | |
| 25-Sep | SL 500 | $ | 80,000.00 |
| Dec | ML 55 Including Air Freight | $ | 57,200.00 |
| 2-Jan | 360 VIN# 125477 | $ | 175,000.00 |
| | S 500 Drive Off Hai | $ | 1,050.00 |
| | Q 45 Drive off Mayer | $ | 2,750.00 |
| | Honda Repair | $ | 968.00 |
| | MBZ Windshield | $ | 880.00 |
| | 1000 Gazi Cash + 1000 Air Tickets | $ | 2,000.00 |
| | Wheels ferrari - Hai | $ | 4,000.00 |
| | Title ferrari | $ | 500.00 |
| | FUNDS EXPENSED FROM VIK | $ | 324,348.00 |
| | TOTAL REMAINING | $ | 625,652.00 |
| | | | |
| | Joy Watch | $ | 8,600.00 |
| | Zareh Watch | $ | 1,800.00 |
| | Cash Dad | $ | 500.00 |
| | TV | $ | 12,000.00 |
| | Joy Watch | $ | 1,500.00 |
| | Joy Bracelet | $ | 2,800.00 |
| | FUNDS EXPENSED FOR VIK | $ | 27,200.00 |
| | BALANCE REMAINING ON ACCOUNT | $ | 652,852.00 |

046566