# EXHIBIT E

THOMAS P. O'BRIEN
United States Attorney
ROBB C. ADKINS
Assistant United States Attorney
Chief, Santa Ana Branch Office
ANDREW STOLPER
Assistant United States Attorney
California Bar Number:   205462
     United States Courthouse
     411 West 4th Street, Suite 8000
     Santa Ana, California 92701
     Telephone: 714.338.3536
     Facsimile: 714.338.3708
     Andrew.Stolper@usdoj.gov

Attorney for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR No. 09-56- |
| | ) | |
| Plaintiff, | ) | PLEA AGREEMENT FOR DEFENDANT |
| | ) | VIKEN KEUYLIAN |
| v. | ) | |
| | ) | |
| VIKEN KEUYLIAN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

1.   This constitutes the plea agreement between VIKEN KEUYLIAN ("defendant") and the United States Attorney's Office for the Central District of California ("the USAO") in the investigation of fraud at Lamborghini of Orange County and Lamborghini of Calabasas.  This agreement is limited to the USAO and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities.

Case 2:04-cr-00373-RGK   Document 598-2   Filed 09/20/11   Page 3 of 22   Page ID
Case 8:09-cr-00056-CJC   Document 5   Filed 03/11/09   Page 2 of 21   Page ID #:10
#:2670

<u>PLEA</u>

2.   Defendant gives up the right to indictment by a grand jury and agrees to plead guilty to a single-count information in the form attached to this agreement or a substantially similar form.

<u>NATURE OF THE OFFENSE</u>

3.   In order for defendant to be guilty of the information which charges wire fraud in violation of Title 18, United States Code, Section 1343, the following must be true: (1) the defendant made up a scheme or plan for obtaining money or property by making false promises or statements; (2) the defendant knew that the promises or statements were false; (3) the promises or statements were material, that is they would reasonably influence a person to part with money or property; (4) the defendant acted with the intent to defraud; and (5) the defendant used, or caused to be used, the interstate wires to carry out or attempt to carry out an essential part of the scheme.   Defendant admits that defendant is, in fact, guilty of this offense as described in the information

<u>PENALTIES AND RESTITUTION</u>

4.   The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Sections 1343 is: 30 years imprisonment; a three-year period of supervised release; a fine of $1,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

2

5. Defendant understands that defendant will be required to pay full restitution to the victims of the offense. Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the amount of restitution is not restricted to the amounts alleged in the information to which defendant is pleading guilty and may include losses arising from charges not prosecuted pursuant to this agreement as well as all relevant conduct in connection with the information. The parties currently believe that the applicable amount of restitution is between $6 and $20 million, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing. Defendant further agrees that defendant will not seek the discharge of any restitution obligation, in whole or in part, in any present or future bankruptcy proceeding.

6. Supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

7. Defendant also understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to

possess a firearm, the right to hold office, and the right to serve on a jury.

8.   Defendant further understands that the conviction in this case may subject defendant to various collateral consequences, including but not limited to, deportation, revocation of probation, parole, or supervised release in another case, and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

FACTUAL BASIS

9.   Defendant and the USAO agree and stipulate to the statement of facts provided below.  This statement of facts includes facts sufficient to support a plea of guilty to the charges described in this agreement and to establish the sentencing guideline factors set forth in paragraph 11 below.  It is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to defendant that relate to that conduct.

SEE ATTACHED

WAIVER OF CONSTITUTIONAL RIGHTS

10.   By pleading guilty, defendant gives up the following rights:

a) The right to persist in a plea of not guilty.

b) The right to a speedy and public trial by jury.

c) The right to the assistance of legal counsel at trial, including the right to have the Court appoint counsel for

4

defendant for the purpose of representation at trial.  (In this regard, defendant understands that, despite his or her plea of guilty, he or she retains the right to be represented by counsel - and, if necessary, to have the court appoint counsel if defendant cannot afford counsel - at every other stage of the proceedings.)

d)   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e)   The right to confront and cross-examine witnesses against defendant.

f)   The right, if defendant wished, to testify on defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

g)   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

By pleading guilty, defendant also gives up any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed

### SENTENCING FACTORS

11.   Defendant understands that the Court is required to consider the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") among other factors in determining

5

defendant's sentence. Defendant understands that the Sentencing Guidelines are only advisory, and that after considering the Sentencing Guidelines, the Court may be free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crimes of conviction.

12. Defendant and the USAO agree and stipulate to the following applicable sentencing guideline factors:

| | | | |
|---|---|---|---|
| Base Offense Level | : | 7 | [U.S.S.G. § 2B1.1] |
| Specific Offense Characteristics: | | | |
| Loss Between $2.5 and $20 million | : | 18 to 20 | [U.S.S.G. §2B1.1(b)(1)] |
| Derived more than $1 million from financial institution | : | 2 | [U.S.S.G. § 2B1.1(b)(13)] |
| Acceptance of Responsibility | : | -3 | [U.S.S.G. §3E1.1] |

Total Offense Level : 24-26

The USAO will agree to a downward adjustment for acceptance of responsibility (and, if applicable, move for an additional level under § 3E1.1(b)) only if the conditions set forth in paragraph 15 are met. Subject to paragraph 15, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments or departures, relating to either the applicable Offense Level or the Criminal History Category, be imposed. If, however, after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a

6

Case 2:04-cr-00373-RGK   Document 598-2   Filed 09/20/11   Page 8 of 22   Page ID
Case 8:09-cr-00056-CJC   Document 5   Filed 03/11/09   Page 7 of 21   Page ID #:15
#:2875

previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section.

13. There is no agreement as to defendant's criminal history or criminal history category.

14. The stipulations in this agreement do not bind either the United States Probation Office or the Court. Both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the calculation of the sentence, and (c) argue on appeal and collateral review that the Court's sentencing guidelines calculations are not error, although each party agrees to maintain its view that the calculations in paragraph 12 are consistent with the facts of this case.

<u>DEFENDANT'S OBLIGATIONS</u>

15. Defendant agrees that he or she will:

a) Plead guilty as set forth in this agreement.

b) Not knowingly and willfully fail to abide by all sentencing stipulations contained in this agreement.

c) Not knowingly and willfully fail to: (i) appear as ordered for all court appearances, (ii) surrender as ordered for service of sentence, (iii) obey all conditions of any bond, and (iv) obey any other ongoing court order in this matter.

d) Not commit any crime; however, offenses which would be excluded for sentencing purposes under U.S.S.G. § 4A1.2(c) are not within the scope of this agreement.

e) Not knowingly and willfully fail to be truthful at all times with Pretrial Services, the U.S. Probation Office, and the Court.

f) Pay the applicable special assessment at or before the time of sentencing unless defendant lacks the ability to pay.

<u>THE USAO'S OBLIGATIONS</u>

16. If defendant complies fully with all defendant's obligations under this agreement, the USAO agrees:

a)   To abide by all sentencing stipulations contained in this agreement.

b)   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, to recommend a two-level reduction in the applicable sentencing guideline offense level, pursuant to U.S.S.G. § 3E1.1, and to recommend and, if necessary, move for an additional one-level reduction if available under that section.

c)   To recommend that defendant be sentenced at the low end of the applicable Sentencing Guidelines range provided that the total offense level as calculated by the Court is 26 or higher and provided that the Court does not depart downward in offense level or criminal history category.  Notwithstanding its agreement to recommend the low end of the Sentencing Guidelines

8

range, the USAO is free to recommend any conditions of confinement, including imprisonment, if the total offense level falls within Zone B or C of the sentencing table.

<u>BREACH OF AGREEMENT</u>

17.  If defendant, at any time between the execution of this agreement and defendant's sentencing on a non-custodial sentence or surrender for service on a custodial sentence, defendant knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  For example, if the defendant knowingly in an interview, before a grand jury, or at trial, falsely accuses another person of criminal conduct or falsely minimizes his (or her) own role, or the role of another, in criminal conduct, he will have breached this agreement.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, defendant will not be able to withdraw defendant's guilty plea, and the USAO will be relieved of all of its obligations under this agreement.  In particular:

a)    The USAO will no longer be bound by any agreements concerning sentencing and will be free to seek any sentence up to the statutory maximum for the crime to which defendant has pleaded guilty.

b)    The USAO will no longer be bound by any agreements regarding criminal prosecution, and will be free to prosecute defendant for any crime.

c)    The USAO will be free to prosecute defendant for

9

Case 2:04-cr-00373-RGK    Document 598-2    Filed 09/20/11    Page 11 of 22    Page ID
Case 8:09-cr-00056-CJC    Document 5    Filed 03/11/09    Page 10 of 21    Page ID #:18
#:2848

false statement, obstruction of justice, and perjury based on any knowingly false or misleading statement by defendant.

d)    The USAO will no longer be bound by any agreement regarding the use of statements, documents, records, tangible evidence, or information provided by defendant, and will be free to use any of those in any way in any investigation, prosecution, or civil or administrative action.  Defendant will not be able to assert either (1) that those statements, documents, records, tangible evidence, or information were obtained in violation of the Fifth Amendment privilege against compelled self-incrimination, or (2) any claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements, documents, records, tangible evidence, or information provided by defendant before or after the signing of this agreement, or any leads derived therefrom, should be inadmissible.

LIMITED MUTUAL WAIVER OF APPEAL AND COLLATERAL ATTACK

18.  Defendant gives up the right to appeal any sentence imposed by the Court, including any order of restitution in excess of $12,560,314, and the manner in which the sentence is determined, provided that (a) the sentence is within the statutory maximum specified above and is constitutional, (b) the Court in determining the applicable guideline range does not depart upward in offense level or criminal history category and determines that the total offense level is 26 or below, (c) the

10

Case 2:04-cr-00373-RGK   Document 598-2   Filed 09/20/11   Page 12 of 22   Page ID
Case 8:09-cr-00056-CJC   Document 5   Filed 03/11/09   Page 11 of 21   Page ID #:19
#:2679

Court imposes a sentence within or below the range corresponding to the determined total offense level and criminal history category; and (d) the Court considers 18 U.S.C. § 3553(a) prior to imposing sentence. Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or a explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction. Notwithstanding the foregoing, defendant retains the ability to appeal the court's determination of defendant's criminal history category.

19. The USAO gives up its right to appeal the Court's sentence, provided that (a) the Court in determining the applicable guideline range does not depart downward in offense level or criminal history category, (b) the Court determines that the total offense level is 26 or above, and (c) the Court imposes a sentence within or above the range corresponding to the determined total offense level and criminal history category.

<u>COURT NOT A PARTY</u>

20. The Court is not a party to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' stipulations. Even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from any stipulation, and/or imposes any sentence up to the maximum

11

established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  No one – not the prosecutor, defendant's attorney, or the Court – can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

21.  Except as set forth herein, there are no promises, understandings or agreements between the USAO and defendant or defendant's counsel.  Nor may any additional agreement, understanding or condition be entered into unless in a writing signed by all parties or on the record in court.

<u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

22.  The parties agree and stipulate that this Agreement will be considered part of the record of defendant's guilty plea hearing as if the entire Agreement had been read into the record of the proceeding.

12

This agreement is effective upon signature by defendant and an Assistant United States Attorney.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA

THOMAS P. O'OBRIEN
United States Attorney

_____        3/10/09
ANDREW STOLPER                            _____
Assistant United States Attorney          Date

I have read this agreement and carefully discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms.  My attorney has advised me of my rights, of possible defenses, of the Sentencing Guideline provisions, and of the consequences of entering into this agreement.  No promises or inducements have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  Finally, I am satisfied with the representation of my attorney in this matter.

_____        3/09/09
VIKEN KEULIAN                             _____
Defendant                                 Date

I am defendant's attorney.  I have carefully discussed every part of this agreement with my client.  Further, I have fully advised my client of his/her rights, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into this agreement.  To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

_____        3/9/09
CRAIG WILKE                               _____
Counsel for Defendant                     Date
VIKEN KEULIAN

Case 2:04-cr-00373-RGK   Document 598-2   Filed 09/20/11   Page 15 of 22   Page ID
#:2882
Case 8:09-cr-00056-CJC   Document 5   Filed 03/11/09   Page 14 of 21   Page ID #:22

**STIPULATED FACTUAL BASIS**

At all relevant times, defendant was the owner of two automobile dealerships: Platinum Motors, LLC d.b.a. Lamborghini of Orange County and Calabasas EuroAutoGroup, LLC d.b.a Lamborghini of Calabasas ("defendant's dealerships"). Defendant was in the business of purchasing Lamborghinis from Automobili Lamborghini SpA of Sant'Agata Bolognese, Italy. Defendant operated one of the largest Lamborghini dealerships, selling up to approximately 5% of Lamborghinis worldwide.

Most of the Lamborghinis on the lot of defendant's dealerships were purchased using funds borrowed from Volkswagen Credit Inc.("VCI") pursuant to a flooring line of credit. Under this agreement, defendant's dealership would borrow money from VCI to purchases cars. As each car was sold, defendant was obligated pay VCI back the money it loaned defendant for that specific vehicle. VCI maintained a security interest in the unsold cars.

Beginning no later than the September 2007, defendant became financially overextended. Defendant was unable to continue to meet his debt obligations related to his various holdings, including his vineyard, a commercial building on Pacific Coast Highway in Newport Beach, California, his Lotus dealership in Beverly Hills, California. To help meet these obligations, defendant began selling cars that VCI had a security interest in, and instead of using the proceeds from the sale to pay VCI back as required, defendant used the funds to pay for his other obligations. Defendant, and others, deceived VCI into believing

14

that certain cars VCI had loaned defendant the money to purchase that were subject to a security interest were still unsold, when in truth and in fact, as defendant well knew, these cars had been sold and the proceeds from those sales had been misappropriated to pay defendant's other obligations.

Beginning in October 2008, defendant sold at least 54 vehicles, mostly Lamborghinis, subject to VCI's flooring line of credit for less than defendant borrowed from VCI to purchase the cars. Defendant took the proceeds from these sales and used them to pay back some of the funds that defendant have previously misappropriated from VCI. The cars defendant sold are described on the attached table. As described in the table, VCI had loaned $12,560,314 to defendant to purchase the 54 cars that defendant sold. Defendant received $8,163,275 in cash from the sales of these cars. Defendant also received trade-in vehicles which defendant values at an additional $853,770. None of the funds defendant received were used to pay back VCI the money it loaned defendant to purchase these 54 cars.

Throughout the scheme, defendant, acting with the intent to defraud, misled VCI into believing that the cars that he sold remained as collateral for the money VCI had lent.

On October 23, 2008, to execute this scheme to defraud, defendant caused $122,660 in funds to be wired from VCI's JP Morgan bank account in Dearborn, Michigan to Wells Fargo Bank, in Santa Ana, California to purchase a 2006 Bentley Continental.

| VIN NUMBER | YEAR | MANU | MODEL | SALE DATE | PURCHASER | CASH RECEIVED | VCI BALANCE |
|---|---|---|---|---|---|---|---|
| SCBCR63W44C 021527 | 2004 | Bentley | CONTINENTAL | 10/24/2008 | AVDAA auction | $ 81,000 | $ 105,720 |
| SCBBR53W36C 034794 | 2006 | Bentley | CONTINENTAL | 10/27/2008 | Autosports | $ 70,000 | $ 122,660 |
| SCBBR53W96C 036467 | 2006 | Bentley | CONTINENTAL | 10/23/2008 | RAA | $ 89,425 | $ 122,660 |
| WDCYR71E68X 170906 | 2008 | Mercedes | G55 | 10/24/2008 | Newport Collectibles | $ 70,000 | $ 88,540 |
| WD8PE845675 189355 | 2007 | Dodge | SPRINTER 250 | 10/27/2008 | Sunrise Auto | $ 60,000 | $ 90,585 |
| ZHWBU16M83L A00676 | 2003 | Lamborghini | MURCIELAGO | 10/16/2008 | Arts Auto | $ 105,000 | $ 166,080 |
| ZHWBU6S14L A01281 | 2008 | Lamborghini | MUR | 10/17/2008 | Newport Collectibles | $ 110,000 | $ 184,080 |
| ZHWBU26S36L A01761 | 2006 | Lamborghini | MURCIELAGO | 10/17/2008 | Newport Collectibles | $ 150,000 | $ 264,480 |
| ZHWBU16S56L A01898 | 2006 | Lamborghini | MURCIELAGO | 10/18/2008 | Arts Auto | $ 149,500 | $ 223,440 |
| ZHWBU26S36L A01985 | 2006 | Lamborghini | MURCIELAGO | 10/17/2008 | Newport Collectibles | $ 175,000 | $ 269,040 |
| ZHWBU26516L A02021 | 2006 | Lamborghini | MURCIELAGO | 10/17/2008 | Newport Collectibles | $ 175,000 | $ 264,480 |
| ZHWBU37MS7L A02062 | 2007 | Lamborghini | MURCIELAGO | 10/17/2008 | Arts Auto | $ 170,000 | $ 288,960 |
| ZHWBU37S28L A02715 | 2008 | Lamborghini | MURCIELAGO | 10/23/2008 | Arts Auto | $ 230,000 | $ 395,690 |
| ZHWBU37SX8L A02798 | 2008 | Lamborghini | MURCIELAGO | 10/24/2008 | Lou Gadio | $ 369,500 | $ 348,572 |
| ZHWBU37S38L A02870 | 2008 | Lamborghini | MURCIELAGO | 10/20/2008 | Allsup | $ 344,570 | $ 344,570 |
| ZWBU47S08L A02895 | 2008 | Lamborghini | MURCIELAGO | 10/17/2008 | sold Exotic, undisposed | $ 550,000 | $ 462,305 |
| ZHWBU47S08L A02914 | 2008 | Lamborghini | MURCIELAGO | 10/23/2008 | Autosports | $ 110,000 | $ 373,290 |
| ZHWBU37598L A03151 | 2008 | Lamborghini | MURCIELAGO | 10/15/2008 | Irani | $ 389,000 | $ 357,580 |
| ZHWBU37S68L A03222 | 2008 | Lamborghini | MURCIELAGO | 10/23/2008 | Newport Collectibles | $ 200,000 | $ 355,200 |
| ZHWBU37S29L A03297 | 2009 | Lamborghini | MURCIELAGO | 10/28/2008 | Newport Collectibles | $ 200,000 | $ 368,350 |
| ZHWGU12T06L A03336 | 2006 | Lamborghini | GALLARDO | 10/23/2008 | Eurocar Inc. | $ 90,000 | $ 150,480 |
| ZHWGU12T66L A03535 | 2006 | Lamboghini | GALLARDO | 10/18/2008 | Arts Auto | $ 105,000 | $ 138,708 |
| ZHWGU22T37L A04164 | 2007 | Lamboghini | GALLARDO SPY | 10/23/2008 | sold Kim, 10/23, $145,000 | $ 145,000 | $ 188,160 |
| ZHWGU22TX7L A04288 | 2007 | Lamboghini | GALLARDO SPY | 10/24/2008 | Hollywood Auto | $ 130,000 | $ 184,800 |
| ZHWGU22N88L A05796 | 2008 | Lamboghini | GALLARDO SPY | 10/23/2008 | Newport Collectibles | $ 120,000 | $ 211,060 |
| ZHWGU43T48L A05836 | 2008 | Lamboghini | GALLARDO SUP | 10/23/2008 | Eurocar Inc. | $ 140,000 | $ 150,000 |
| ZHWGU43T78L A06141 | 2008 | Lamboghini | GALLARDO | 10/24/2008 | AVDAA auction | $ 140,000 | $ 229,385 |
| ZHWGU22T88L A06512 | 2008 | Lamboghini | GALLARDO SPY | 10/15/2008 | Gugasian | $ 185,000 | $ 223,235 |
| ZHWGU43T38L A06718 | 2008 | Lamboghini | GALLARDO SUP | 10/23/2008 | Newport Collectibles | $ 120,000 | $ 231,065 |
| ZHWGU22T88L A07014 | 2008 | Lamboghini | GALLARDO SPY | 10/22/2008 | Arts Auto | $ 165,000 | $ 219,300 |
| ZHWGU22T68L A07223 | 2008 | Lamboghini | GALLARDO SPY | 10/23/2008 | Newport Collectibles | $ 120,000 | $ 222,930 |
| ZHWGU22T78L A07537 | 2008 | Lamboghini | GALLARDO SPY | 10/23/2008 | Newport Collectibles | $ 120,000 | $ 226,060 |
| ZHWGU22T98L A07541 | 2008 | Lamboghini | GALLARDO SPY | 10/22/2008 | Arts Auto | $ 165,000 | $ 222,795 |
| ZHWGU54T39L A07891 | 2009 | Lamboghini | GALLARDO 560 | 10/23/2008 | Newport Collectibles | $ 120,000 | $ 224,595 |

Case 2:04-cr-00373-RGK   Document 598-2   Filed 09/20/11   Page 18 of 22   Page ID
Case 8:09-cr-00056-CJC   Document 5-2 Filed 03/11/09   Page 17 of 21   Page ID #:25
#:2886

| VIN NUMBER | YEAR | MANU | MODEL | SALE DATE | PURCHASER | CASH RECEIVED | | VCI BALANCE | |
|---|---|---|---|---|---|---|---|---|---|
| ZHWGU54T89L A08017 | 2009 | Lamboghini | GALLARDO 560 | 10/27/2008 | Newport Collectibles | $ | 120,000 | $ | 229,519 |
| SCBCR63W95C 024893 | 2005 | Bentley | CONTINENTAL | 10/27/2008 | Autosports | $ | 70,000 | $ | 115,060 |
| WDDNG71X67A 098502 | 2007 | Mercedes | S550 | 10/27/2008 | Autosports | $ | 50,000 | $ | 68,000 |
| ZFFEW59A470 152419 | 2007 | Ferrari | 430 F430 SPI | 10/17/2008 | Newport Collectibles | $ | 185,000 | $ | 255,360 |
| ZHWBU16S24L A00978 | 2004 | Lamboghini | MURCIELAGO | 10/17/2008 | Newport Collectibles | $ | 115,000 | $ | 187,840 |
| ZHWBU16S16L A01753 | 2006 | Lamboghini | MURCIELAGO | 10/17/2008 | Newport Collectibles | $ | 130,000 | $ | 230,720 |
| ZHWBU47S37L A02369 | 2007 | Lamboghini | MURCIELAGO | 10/17/2008 | Newport Collectibles | $ | 200,000 | $ | 394,680 |
| ZHWBU47S77L A02388 | 2007 | Lamboghini | MURCIELAGO | 10/17/2008 | Newport Collectibles | $ | 200,000 | $ | 340,480 |
| ZHWBU37S68L A02717 | 2008 | Lamboghini | MURCIELAGO | 10/17/2008 | Newport Collectibles | $ | 200,000 | $ | 343,505 |
| ZHWBU37S68L A03088 | 2008 | Lamboghini | MURCIELAGO | 10/23/2008 | Levon Gugasian (Newport) | $ | 90,000 | $ | 336,320 |
| ZHWBU47S69L A03471 | 2009 | Lamboghini | LP640 | 10/23/2008 | Levon Gugasian (Newport) | $ | 60,430 | $ | 387,720 |
| ZHWGU12T86L A03665 | 2006 | Lamboghini | GALLARDO | 10/20/2008 | Eurocar Inc. | $ | 117,000 | $ | 154,120 |
| ZHWGU22T76L A03677 | 2006 | Lamboghini | GALLARDO SPY | 10/24/2008 | AVDAA auction | $ | 105,000 | $ | 182,400 |
| ZHWGU22T06L A04069 | 2006 | Lamboghini | GALLARDO SPY | 10/17/2008 | AVDAA auction | $ | 126,500 | $ | 182,400 |
| ZHWGU22T97L A04590 | 2007 | Lamboghini | GALLARDO SPY | 10/20/2008 | AVDAA auction | $ | 145,000 | $ | 185,460 |
| ZHWGU22T48L A06538 | 2008 | Lamboghini | GALLARDO SPY | 10/23/2008 | Eurocar Inc. | $ | 140,000 | $ | 223,835 |
| ZHWGU22T98L A07409 | 2008 | Lamboghini | GALLARDO SPY | 10/23/2008 | Newport Collectibles | $ | 120,000 | $ | 223,100 |
| ZHWGU22T28L A07428 | 2008 | Lamboghini | GALLARDO SPY | 10/23/2008 | Newport Collectibles | $ | 120,000 | $ | 223,420 |
| ZHWGU22T18L A07436 | 2008 | Lamboghini | GALLARDO SPY | 10/22/2008 | Arts Auto | $ | 165,000 | $ | 223,840 |
| SAJ0A44B275 B03603 | 2007 | Jaguar | XK | 10/24/2008 | AVDAA auction | $ | 41,350 | $ | 53,680 |
| | | | | | **Totals** | **$** | **8,163,275** | **$** | **12,560,314** |

COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

UNITED STATES OF AMERICA,  ) No. SA CR 09-
                           )
         Plaintiff,        ) I N F O R M A T I O N
                           )
         v.                ) [18 U.S.C. § 1343: Wire Fraud]
                           )
VIKEN KEUYLIAN,            )
                           )
         Defendant.        )
_____)

The United States Attorney charges:

[18 U.S.C. § 1343]

At all times relevant to this information:

A.    **INTRODUCTION**

1. At all relevant times, VIKEN KEUYLIAN ("defendant") was the owner of two automobile dealerships: Platinum Motors, LLC d.b.a. Lamborghini of Orange County and Calabasas EuroAutoGroup, LLC d.b.a Lamborghini of Calabasas ("defendant's dealerships").

2. Most of the Lamborghinis on the lot of defendant's dealerships were purchased using funds borrowed from Volkswagen Credit Inc.("VCI") pursuant to a flooring line of credit. Under this agreement, defendant's dealership would borrow money from

VCI to purchases cars.  As each car was sold, defendant was obligated pay VCI back the money it loaned defendant for that specific vehicle.  VCI maintained a security interest in the unsold cars.

B.    SCHEME TO DEFRAUD

3.    Beginning no later than September 2007, defendant KEUYLIAN became financially overextended.  Defendant KEUYLIAN was unable to continue to meet his debt obligations related to his various holdings, including his vineyard, a commercial building on Pacific Coast Highway in Newport Beach, California, and his Lotus dealership in Beverly Hills, California.  To help meet these obligations, defendant KEUYLIAN began selling cars that VCI had a security interest in, and instead of using the proceeds from the sale to pay VCI back as required, defendant KEUYLIAN used the funds to pay for his other obligations.  Defendant KEUYLIAN, and others, deceived VCI into believing that certain cars VCI had loaned defendant KEUYLIAN the money to purchase that were subject to a security interest were still unsold, when in truth and in fact, as defendant KEUYLIAN well knew, these cars had been sold and the proceeds from those sales had been misappropriated to pay defendant's other obligations.

4.    Beginning in October 2008, defendant KEUYLIAN sold at least 54 vehicles, mostly Lamborghinis, subject to VCI's flooring line of credit for less than defendant borrowed from VCI to purchase the cars.  Defendant KEUYLIAN took the proceeds from these sales and used them to pay back some of the funds that defendant KEUYLIAN have previously misappropriated from VCI.  VCI had loaned $12,560,314 to defendant KEUYLIAN to purchase the 54

2

Case 2:04-cr-00373-RGK    Document 598-2    Filed 09/20/11    Page 21 of 22    Page ID
Case 8:09-cr-00056-CJC    Document 5    Filed 03/11/09    Page 20 of 21    Page ID #:28
#:2888

cars that defendant sold.  Defendant KEUYLIAN received $8,163,275 in cash from the sales of these cars.  None of the funds defendant received were used to pay back VCI the money it loaned defendant KEUYLIAN to purchase these 54 cars.

5.  Throughout the scheme, defendant KEUYLIAN, acting with the intent to defraud, misled VCI into believing that the cars that he sold remained as collateral for the money VCI had lent

C.  **EXECUTION OF THE SCHEME**

6.  Beginning no later than September 2007, in Orange County, within the Central District of California, and elsewhere, defendant KEUYLIAN, and others, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud VCI by means of materially false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

7.  On or about the date set forth below, in Orange County, within the Central District of California, and elsewhere, defendant KEUYLIAN, for the purpose of executing and attempting to execute the above-described scheme to defraud, caused the

///

///

///

///

3

following to be transmitted by means of wire communication in interstate commerce:

| COUNT | DATE | WIRING |
|-------|------|--------|
| ONE | 10/23/2008 | Wiring of $122,660 of funds from VCI's JP Morgan account in Dearborn, Michigan to Wells Fargo Bank, in Santa Ana, California to purchase a 2006 Bentley Continental |

THOMAS P. O'BRIEN
United States Attorney

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division

ROBB C. ADKINS
Assistant United States Attorney
Chief, Southern Division

ANDREW STOLPER
Assistant United States Attorney

4