# EXHIBIT L

dates within the Central District of California and elsewhere:

1.    From 1999 to 2000, an unindicted co-conspirator ("UC-9"), caused the importation of MDMA from the Netherlands to in and around Los Angeles County, California.

2.    From 2000 to 2003, in and around Los Angeles County, California, defendant MALUL sold MDMA to members of the Vineland Boys street gang, including Luis Sandoval.

3.    In April 2001, in and around Los Angeles County, California, defendant MALUL received a shipment of over 1 million tablets of MDMA and began distributing the tablets of MDMA.

4.    From 2001 to 2003, Luis Sandoval and a leader of the Vineland Boys street gang sent associates to protect defendant MALUL during negotiations with other drug traffickers.

5.    On April 30, 2002, defendant MALUL drove to the residence of co-conspirator Kobi Amsalem, picked-up Kobi Amsalem, and then drove Kobi Amsalem to the residence of an unindicted co-conspirator ("UC-10").

6.    On April 30, 2002, defendant MALUL and Kobi Amsalem left UC-10's residence with a bag and drove to the residence of a leader of the Vineland Boys street gang.

7.    On May 2, 2002, defendant MALUL met Kobi Amsalem and picked-up a package from Kobi Amsalem.

8.    On May 12, 2002, Luis Sandoval and a leader of the Vineland Boys street gang distributed approximately 5,000 tablets of MDMA.

9.    In June 2002, defendant MALUL, an unindicted co-conspirator ("UC-11"), and UC-9 financed, purchased and arranged

for transportation of a shipment of approximately 76 kilograms of MDMA tablets from Belgium.

10. On July 14, 2002, Kobi Amsalem and an unindicted co-conspirator ("UC-12") possessed approximately 76 kilograms of MDMA, belonging to defendant MALUL, UC-9, and UC-11 in Los Angeles County, California.

11. In December 2002, in Israel, defendant MALUL, UC-9 and UC-11 met to discuss retaliation for the attempted theft of a shipment of approximately 76 kilograms of MDMA belonging to defendant MALUL, UC-9 and UC-11 by Sami Atias, Kobi Amsalem, and Tal Brisman that occurred in Los Angeles County, California, on July 14, 2002.

12. In December 2002, in Israel, defendant MALUL, UC-9, and UC-11 agreed to kill Sami Atias and Kobi Amsalem, and to extort money from Tal Brisman.

13. In 2003, defendant MALUL traveled from Israel to the United States, including Los Angeles, California.

14. During the summer of 2003, during meetings in Spain and elsewhere, defendant ITZHAK ABERGIL and UC-9 agreed to traffic narcotics, including cocaine and hash, in Europe and Canada, and elsewhere.

15. During the summer of 2003, in Spain, defendant ITZHAK ABERGIL offered to help UC-9 kill Sami Atias.

16. On July 15, 2003, defendant ITZHAK ABERGIL arrived in Belgium from Malaga, Spain, on Virgin Airlines flight #841.

17. In August 2003, Luis Sandoval and an unindicted co-conspirator ("UC-13") met with defendant MALUL and discussed finding and murdering Sami Atias.

43

18.   In August 2003, Luis Sandoval and UC-13 went with defendant MALUL to look for Sami Atias in order to murder him.

19.   In August 2003, defendant MALUL took Luis Sandoval and UC-13 to Café Bazel in Encino, California, to look for Sami Atias in order to murder him.

20.   In August 2003, defendant MALUL took Luis Sandoval and UC-13 to the residence of Sami Atias to look for Sami Atias in order to murder him.

21.   On August 31, 2003, in Encino, California, defendant MALUL, Luis Sandoval, and unindicted co-conspirators ("UC-14" and "UC-15") went to a street near the parking lot of Café Bazel in order to kill Sami Atias.

22.   On August 31, 2003, in Encino, California, UC-14 shot and killed Sami Atias as Sami Atias left the parking lot of Café Bazel.

23.   In September 2003, defendant ITZHAK ABERGIL met with UC-9 and offered his assistance in finding Tal Brisman.

24.   In September 2003, defendant ITZHAK ABERGIL met with UC-9 and discussed a plan with UC-9 to extort money from Tal Brisman in retaliation for an attempt by Tal Brisman and others to steal MDMA from the DTO.

25.   On September 3, 2003, Luis Sandoval, UC-13, UC-14, and UC-15 went to pick up money from defendant MALUL for the murder of Sami Atias.

26.   On September 7, 2003, in a telephone conversation with UC-9, defendant ITZHAK ABERGIL confirmed that defendant ITZHAK ABERGIL had heard about the murder of Sami Atias.

27.   On September 7, 2003, in a telephone conversation with

44

UC-9, defendant ITZHAK ABERGIL confirmed that defendant ITZHAK ABERGIL had alerted other members of the DTO, located in and around Los Angeles, California, that the murder of Sami Atias was not an attack on the DTO.

28.  On September 17, 2003, by telephone in Spain, defendant ITZHAK ABERGIL spoke to an unindicted co-conspirator ("UC-16") about getting drug proceeds from defendant MALUL in Los Angeles, California.

29.  On October 8, 2003, in Los Angeles, California, defendant MALUL presented to law enforcement personnel identification in the name Eliyahu Ben Naim.

30.  On November 14, 2003, by telephone, defendant ITZHAK ABERGIL in Belgium told an unindicted co-conspirator ("UC-17") that he needed "someone for everything."

31.  On November 18, 2003, by telephone, defendant ITZHAK ABERGIL told an unindicted co-conspirator ("UC-18") that defendant ITZHAK ABERGIL does not want to "lead the sheep to slaughter," and that he does not have the energy to go back to prison.

32.  On November 25, 2003, defendant MALUL presented to law enforcement personnel a Florida driver's license in the name Eliyahu Ben Naim and possessed a telephone number for Luis Sandoval.

33.  On April 30, 2004, by telephone in Belgium, defendant ITZHAK ABERGIL instructed UC-18 that defendant ITZHAK ABERGIL and UC-18 were to meet with defendant MALUL.

34.  On May 1, 2004, by telephone in Belgium, defendant ITZHAK ABERGIL and UC-18 discussed that defendant MALUL makes the

45

decisions for the Malul Brothers.

35.  On May 2, 2004, by telephone, defendant ITZHAK ABERGIL and co-conspirator Israel Ozifa discussed a narcotics deal concerning UC-9.

36.  On May 31, 2004, by telephone, defendant ITZHAK ABERGIL, in Belgium, called Israel to inquire about the new law in Israel on organized crime.

37.  On May, 2006, in Japan, two members of the DTO attempted to murder UC-9.

38.  On May 22, 2006, in Haifa, Israel, defendant ITZHAK ABERGIL and defendant MALUL met together with another member of the DTO.

All in violation of Title 18, United States Code, Section 1962(d).

46

NOTICE OF SPECIAL SENTENCING FACTORS REGARDING COUNT THREE

Number 1: Conspiracy to Murder Sami Atias

Beginning on an unknown date through on or about August 31, 2003, in Los Angeles County, within the Central District of California, defendant MOSHE MALUL, also known as ("aka") Eliyahu Ben Naim, aka Eli Adawi, aka Yochay Malul, aka Shimon Ohana, aka Moses Malul and defendant ITZHAK ABERGIL, aka Itzhak Abergel, aka Yitzhak Abergel, aka the Friend, aka the Big Friend, aka the Man From the South, and others known and unknown to the Grand Jury, unlawfully, willfully, deliberately, and with premeditation conspired to kill with malice aforethought Sami Atias in violation of California Penal Code, Sections 182, 187, and 189.

Number 2: Attempted Murder of Sami Atias

In or around August 2003, in Los Angeles County, within the Central District of California, defendant MOSHE MALUL, also known as ("aka") Eliyahu Ben Naim, aka Eli Adawi, aka Yochay Malul, aka Shimon Ohana, aka Moses Malul and defendant ITZHAK ABERGIL, aka Itzhak Abergel, aka Yitzhak Abergel, aka the Friend, aka the Big Friend, aka the Man From the South, and others known and unknown to the Grand Jury, unlawfully, willfully, deliberately, and with premeditation attempted to kill with malice aforethought Sami Atias and did aid and abet, encourage, and otherwise participate in the attempted murder of Sami Atias in violation of California Penal Code, Sections 21a, 31, 187, 189, and 664.

Number 3: Murder of Sami Atias

On or about August 31, 2003, in Los Angeles County, within the Central District of California, defendant MOSHE MALUL, also known as ("aka") Eliyahu Ben Naim, aka Eli Adawi, aka Yochay

47

Malul, aka Shimon Ohana, aka Moses Malul and defendant ITZHAK ABERGIL, aka Itzhak Abergel, aka Yitzhak Abergel, aka the Friend, aka the Big Friend, aka the Man From the South, and others known and unknown to the Grand Jury, unlawfully, willfully, deliberately, and with premeditation did kill with malice aforethought Sami Atias, and did aid and abet, encourage, and otherwise participate in the murder of Sami Atias in violation of California Penal Code, Sections 31, 187, and 189.

Number 4: Foreign and Interstate Travel Re: Murder for Hire

In or around 2003, in Los Angeles County, within the Central District of California, defendant MOSHE MALUL, also known as ("aka") Eliyahu Ben Naim, aka Eli Adawi, aka Yochay Malul, aka Shimon Ohana, aka Moses Malul, and others known and unknown to the Grand Jury, traveled in interstate and foreign commerce from Israel to the United States with intent that the murder of Sami Atias be committed in violation of the laws of California as consideration for the receipt of, and as consideration for a promise and agreement to pay, things of pecuniary value, all in violation of Title 18, United States Code, Sections 1958 and 2.

48

COUNT FOUR

[18 U.S.C. § 1959(a)(5)]

1. At times relevant to this Second Superseding Indictment, the Drug Trafficking Organization ("DTO"), as described more particularly in Subheadings A, B, C, and D of Count Three of this Indictment, which paragraphs are incorporated and re-alleged herein as if set forth in full, constituted an enterprise as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact, which was engaged in, and the activities of which affected, interstate and foreign commerce.

2. At times relevant to this Second Superseding Indictment, the DTO, through its members and associates, was engaged in racketeering activity, as defined in Title 18, United States Code Sections 1959(b)(1) and 1961(1), that is, acts involving narcotics trafficking in violation of Title 21, United States Code, Sections 841, 846, 952(a), and 963.

3. Beginning on an unknown date through on or about August 31, 2003, in Los Angeles County, within the Central District of California, as consideration for the receipt of, and as consideration for a promise and an agreement to pay, a thing of pecuniary value from the DTO, and for the purpose of gaining entrance to and maintaining and increasing position in the DTO, an enterprise engaged in racketeering activity, defendant MOSHE MALUL, also known as ("aka") Eliyahu Ben Naim, aka Eli Adawi, aka Yochay Malul, aka Shimon Ohana, aka Moses Malul, defendant ITZHAK ABERGIL, aka Itzhak Abergel, aka Yitzhak Abergel, aka the Friend, aka the Big Friend, aka the Man From the South, and defendant

49

LUIS SANDOVAL, aka Barney Twin, aka Hog, and others known and unknown to the Grand Jury, unlawfully and knowingly conspired to murder Sami Atias in violation of California Penal Code, Sections 182, 187, and 189.

In violation of Title 18, United States Code, Section 1959(a)(5).

COUNT FIVE

[18 U.S.C. §§ 1959(a)(5) and 2]

1.   Paragraphs 1 and 2 of Count Four of this Indictment are incorporated and re-alleged herein as if set forth in full.

2.   In or around August 2003, in Los Angeles County, within the Central District of California, as consideration for the receipt of, and as consideration for a promise and an agreement to pay, a thing of pecuniary value from the DTO, and for the purpose of gaining entrance to and maintaining and increasing position in the DTO, an enterprise engaged in racketeering activity, defendant MOSHE MALUL, also known as ("aka") Eliyahu Ben Naim, aka Eli Adawi, aka Yochay Malul, aka Shimon Ohana, aka Moses Malul, defendant ITZHAK ABERGIL, aka Itzhak Abergel, aka Yitzhak Abergel, aka the Friend, aka the Big Friend, aka the Man From the South, and defendant LUIS SANDOVAL, aka Barney Twin, aka Hog, and others, known and unknown to the Grand Jury, unlawfully and knowingly attempted to murder and did aid and abet the attempted murder of Sami Atias in violation of California Penal Code, Sections 21a, 31, 187, 189, and 664.

In violation of Title 18, United States Code, Sections 1959(a)(5) and 2.

51

COUNT SIX

[18 U.S.C. §§ 1959(a)(1) and 2]

1.   Paragraphs 1 and 2 of Count Four of this Indictment are incorporated and re-alleged herein as if set forth in full.

2.   On or about August 31, 2003, in Los Angeles County, within the Central District of California, as consideration for the receipt of, and as consideration for a promise and an agreement to pay, a thing of pecuniary value from the DTO, and for the purpose of gaining entrance to and maintaining and increasing position in the DTO, an enterprise engaged in racketeering activity, defendant MOSHE MALUL, also known as ("aka") Eliyahu Ben Naim, aka Eli Adawi, aka Yochay Malul, aka Shimon Ohana, aka Moses Malul, defendant ITZHAK ABERGIL, aka Itzhak Abergel, aka Yitzhak Abergel, aka the Friend, aka the Big Friend, aka the Man From the South, and defendant LUIS SANDOVAL, aka Barney Twin, aka Hog, and others known and unknown to the Grand Jury, unlawfully and knowingly murdered and did aid and abet the murder of Sami Atias, in violation of California Penal Code, Sections 31, 187, and 189.

In violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

COUNT SEVEN

[21 U.S.C. § 846]

A.    OBJECTS OF THE CONSPIRACY

Beginning on an unknown date and continuing to in or about August 2004, in Los Angeles County, within the Central District of California, and elsewhere, defendant ITZHAK ABERGIL; also known as ("aka") Itzhak Abergel, aka Yitzhak Abergel, aka the Friend, aka the Big Friend, aka the Man From the South ("ITZHAK ABERGIL"), defendant ISRAEL OZIFA ("OZIFA") aka Israel the Tall, aka the Tall One, and others known and unknown to the Grand Jury, knowingly and willfully conspired and agreed with each other to commit the following offense against the United States: distribution of more than 50 kilograms of 3,4-methylenedioxymethamphetamine ("MDMA"), a schedule I controlled substance, in violation of Title 21, United States Code § 841(a).

B.    MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

The object of the conspiracy was to be accomplished in substance as follows:

1.    Defendant ITZHAK ABERGIL, the head of one of the prominent crime families in Israel, namely, the Abergil Family, would direct other co-conspirators in the trafficking of MDMA and other controlled substances around the world, including into the United States, and would receive reports from subordinates on the status of their narcotics trafficking around the world.

2.    Defendant OZIFA, a leader of the of Abergil Family based in Belgium, would obtain MDMA, coordinate its importation

53

into the United States and elsewhere, and launder drug proceeds. Defendant OZIFA would also update defendant ITZHAK ABERGIL on the status of the trafficking of MDMA.

3.    Co-conspirator Yaniv Haziza ("Haziza"), based in Belgium, and others, would deliver MDMA from defendant OZIFA to couriers going to the United States and elsewhere.

4.    Co-conspirator Eliyahu Marciano ("Marciano") would purchase large quantities of MDMA that originated from defendants OZIFA and ITZHAK ABERGIL.

5.    Co-conspirator Marciano would hire Vince Wilson ("Wilson") to arrange for shipment of the MDMA from Belgium to the United States.

6.    Co-conspirator Wilson would recruit and would hire co-conspirator Tyreisha Baldwin ("Baldwin") to travel to Antwerp, Belgium, to receive the MDMA from Haziza and ship it to the United States.  Co-conspirator Wilson would direct Baldwin to ship the MDMA using express mail services to addresses Wilson obtained in Los Angeles.

7.    Unindicted co-conpirator ("UC-19"), a member of the Abergil Family, would coordinate the distribution of MDMA throughout the world for the Abergil Family.

C.    OVERT ACTS

In furtherance of the conspiracy and to accomplish the object of the conspiracy, defendants and others known and unknown to the Grand Jury committed various overt acts on or about the following dates, within the Central District of California and elsewhere, including but not limited to the following:

54

1.   In April 2001, an unindicted co-conspirator ("UC-20") offered another unindicted co-conspirator ("UC-21") a shipment of 2 million tablets of MDMA in Los Angeles belonging to defendant ITZHAK ABERGIL.

2.   On July 15, 2003, defendant ITZHAK ABERGIL arrived at Zaventem Airport, Brussels, Belgium, from Malaga, Spain, on Virgin Airlines Flight #841.

3.   On July 29, 2003, by telephone in Spain, defendant ITZHAK ABERGIL and UC-19 discussed narcotics trafficking with defendant OZIFA.

4.   On August 5, 2003, by telephone in Spain, defendant ITZHAK ABERGIL asked UC-19 for MDMA and said he would call from a "good" phone.

5.   On August 8, 2003, by telephone in Spain, defendant ITZHAK ABERGIL spoke to UC-19 about finding defendant ITZHAK ABERGIL some illegal drugs, and said to call co-conspirator Yoram El-Al if he needed money.

6.   On September 20, 2003, in Los Angeles, Wilson drove Baldwin to the Los Angeles International Airport to travel to Antwerp, Belgium.

7.   On September 21, 2003, an unidentified Israeli male gave Baldwin several packages of MDMA, which she concealed in stuffed toy tigers and then sent to the United States.

8.   On September 24, 2003, Wilson, by telephone, instructed Baldwin, who was then in Antwerp, Belgium, to send two packages, each containing approximately nine kilograms of MDMA, to Marciano in Los Angeles, California, by Federal Express.

9.   On September 25, 2003, United States Customs and Border

55

Protection ("Customs") intercepted a Federal Express package containing approximately 40,000 tablets of MDMA, which had been shipped from Brussels, Belgium, to Marciano in Los Angeles, California.

10. On September 26, 2003, in Los Angeles, Marciano received a package containing approximately nine kilograms of MDMA that Baldwin shipped from Antwerp, Belgium.

11. On November 9, 2003, by telephone in Belgium, defendant OZIFA received several telephone calls from narcotics traffickers working for the drug trafficking organization of defendant ITZHAK ABERGIL who were looking for ITZHAK ABERGIL in order to discuss narcotics trafficking.

12. On November 12, 2003, in Los Angeles and San Diego, California, Marciano met with an unindicted co-conspirator ("UC-22"), the father of another unindicted co-conspirator, and others, to discuss MDMA trafficking.

13. On November 13, 2003, by telephone in Belgium, defendant ITZHAK ABERGIL spoke to an unidentified male who said he was putting a deal together with UC-19 and that they would make money.

14. On November 15, 2003, by telephone in Belgium, defendant OZIFA spoke to UC-18, a member of the Abergil Family, about "pills, powder, and hash."

15. On November 15, 2003, by telephone in Belgium, UC-19, a member of the Abergil Family, updated defendant ITZHAK ABERGIL on his drug business dealings in North America.

16. On November 16, 2003, by telephone in Belgium, defendant OZIFA spoke to an unidentified male about a load of

56

drugs in Spain for defendant OZIFA to see, and a load of drugs in Canada that was not selling.

17. On November 17, 2003, by telephone in Belgium, defendant OZIFA spoke to an unidentified male about the unidentified male's need to exchange a half million dollars ($500,000) for 500,000 Euros. The unidentified male asked defendant OZIFA to check how much they could take, and that he also wanted to exchange $150,000 from small denominations.

18. On November 18, 2003, by telephone in Belgium, defendant OZIFA spoke to an unidentified male about conducting two transactions of 100,000 MDMA tablets.

19. On November 19, 2003, by telephone in Belgium, defendant ITZHAK ABERGIL instructed defendant OZIFA to turn his telephone on and ordered defendant OZIFA to turn around and pick him up.

20. On November 20, 2003, by telephone in Belgium, defendant OZIFA spoke to an unidentified male about getting a good price for narcotics and about transporting the drugs out of Belgium.

21. On November 21, 2003, by telephone in Belgium, defendant OZIFA told defendant ITZHAK ABERGIL that co-conspirator Meir Abergil had arrived and he would pick them all up for the meeting.

22. On November 21, 2003, by telephone in Belgium, defendant ITZHAK ABERGIL spoke to an unindicted co-conspirator ("UC-24") about having problems and instructed UC-24 that they have to keep the drugs moving or they will be stuck with the drugs.

57

23.    On November 30, 2003, by telephone in Belgium, defendant OZIFA spoke to Haziza about giving Haziza money for being his courier.

24.    On December 2, 2003, by telephone in Belgium, defendant OZIFA warned defendant ITZHAK ABERGIL that he believed co-conspirator Yoram El-Al was using defendant ITZHAK ABERGIL's name when doing drug deals.  Defendants OZIFA and ITZHAK ABERGIL also spoke about communicating with another unindicted co-conspirator ("UC-25"), to ensure that their share of the narcotics proceeds remained the same.

25.    On December 8, 2003, by telephone in Thailand, defendant ITZHAK ABERGIL called defendant OZIFA, in Belgium, and asked defendant OZIFA about the status of shipments of MDMA, including a shipment of sixty thousand MDMA pills.  Defendant OZIFA also told defendant ITZHAK ABERGIL that defendant OZIFA had heard "good things" about their MDMA trafficking through UC-22.

26.    On December 8, 2003, by telephone in Thailand, defendant ITZHAK ABERGIL called defendant OZIFA, in Belgium, and instructed defendant OZIFA to send $50,000 dollars through Western Union to another co-conspirator.

27.    On December 9, 2003, by telephone in Belgium, defendant OZIFA spoke to Haziza about obtaining some of the MDMA pills Haziza had delivered to defendant OZIFA the day before and providing them to a customer.

28.    On December 10, 2003, by telephone in Belgium, defendant OZIFA spoke to Haziza about Haziza delivering MDMA to a customer the day before.

29.    On December 11, 2003, by telephone in Belgium,

58

defendant OZIFA told defendant ITZHAK ABERGIL that he was leaving to meet UC-22 to discuss a recent successful narcotics deal.

30. On December 11, 2003, by telephone in Belgium, defendant ITZHAK ABERGIL instructed defendant OZIFA to get everyone together for a meeting, and to inform UC-25 that defendant ITZHAK ABERGIL had the ability to supply drugs to him wherever UC-25 wanted the drugs.

31. On December 11, 2003, by telephone in Belgium, defendant ITZHAK ABERGIL inquired what defendant OZIFA was doing with narcotics proceeds.

32. On December 12, 2003, by telephone in Belgium, defendant OZIFA asked UC-19 to take care of the getting the MDMA ready for a customer while defendant OZIFA was out of town. Defendant OZIFA told UC-19 that defendant OZIFA did not want bad quality MDMA and the MDMA deal would happen on December 16, 2003.

33. On December 13, 2003, in Los Angeles, California, Wilson instructed Baldwin to travel to Belgium in order to ship MDMA to the United States.

34. On December 16, 2003, in Antwerp, Belgium, Haziza delivered approximately 30 kilograms of MDMA to Baldwin in a hotel room.

35. From December 16, 2003, through December 23, 2003, Baldwin, from Belgium, sent approximately seven packages containing approximately 30 kilograms of MDMA to locations in Los Angeles, California.

36. On December 23, 2003, in Los Angeles, California, Marciano used a prepaid calling card to call a Belgian telephone number that belonged to Haziza.

59

37. On December 24, 2003, in Los Angeles, California, Marciano used prepaid calling cards from pay telephones to contact Wilson.

38. On December 24, 2003, in Los Angeles, California, Marciano went to an internet café to access the DHL website and check on the airway bill numbers of packages containing MDMA sent by Baldwin.

39. On May 2, 2004, by telephone in Belgium, defendant ITZHAK ABERGIL informed defendant OZIFA that UC-19 found some good narcotics, and asked defendant OZIFA for an update on the narcotics proceeds. Defendant OZIFA told defendant ITZHAK ABERGIL that he had received $20,000 and was expecting the delivery of another $60,000.

40. On May 2, 2004, by telephone, defendant ITZHAK ABERGIL and defendant OZIFA discussed a narcotics deal concerning an unindicted co-conspirator ("UC-9").

41. On May 3, 2004, by telephone in Belgium, defendant ITZHAK ABERGIL instructed defendant OZIFA to give money to UC-19, and told defendant OZIFA that he would finish up a deal and leave for Thailand.

42. On May 5, 2004, by telephone in Belgium, defendant ITZHAK ABERGIL directed defendant OZIFA to get everything together and said he would tell defendant OZIFA where to go.

43. On May 5, 2004, by telephone in Belgium, defendant ITZHAK ABERGIL spoke to defendant OZIFA about getting him money and taking it from "another account" to give to defendant ITZHAK ABERGIL. Defendant OZIFA explained that when the money was released from one location, he would give it to defendant ITZHAK

60

ABERGIL.

44. On May 16, 2004, by telephone in Belgium, defendant ITZHAK ABERGIL was updated by UC-19 about collecting money from narcotics customers, and was also informed that UC-19 was still working with defendant OZIFA to finish a narcotics transaction.

45. On May 31, 2004, by telephone in Belgium, defendant OZIFA spoke to Haziza about how Haziza failed to receive drug proceeds from a customer.

46. On May 31, 2004, by telephone, defendant ITZHAK ABERGIL, in Belgium, called Israel to inquire about the new law in Israel on organized crime.

47. On June 1, 2004, by telephone in Belgium, defendant OZIFA called the Crown Plaza Hotel in Antwerp, Belgium, and asked for Haziza and the room of another unindicted co-conspirator ("UC-23").

48. On June 1, 2004, by telephone in Belgium, Haziza asked defendant OZIFA if it was okay to mix valium in with the "batch," and defendant OZIFA replied that Haziza could mix a little, but not too much.

49. On June 9, 2004, by telephone in Belgium, defendant OZIFA and UC-19 called defendant ITZHAK ABERGIL and UC-19's brother to notify them that defendant OZIFA and UC-19 had been arrested using fake passports, and instructed defendant ITZHAK ABERGIL and UC-19's brother to clean out OZIFA's house.

50. On June 26, 2004, by telephone in Belgium, defendant OZIFA spoke to UC-23 in Israel about defendant OZIFA's anger with Haziza, and how Haziza could be a potential government witness against them.

61

51. On June 26, 2004, by telephone in Belgium, defendant OZIFA spoke to Haziza about his anger with Haziza for "messing with the batch." Defendant OZIFA said he wanted to kill Haziza for ruining their "product."

52. On June 28, 2004, by telephone in Belgium, defendant OZIFA spoke to UC-22, in Israel, regarding the arrests of Marciano and others and expressed his anger at Haziza.

53. On July 15, 2004, in Japan, UC-19 and other members of the Abergil Family attempted to import 60,000 tablets of MDMA into Japan from Europe.

54. On July 26, 2004, by telephone in Belgium, UC-19 spoke with an MDMA source of supply in the Netherlands about an order of 100,000 tablets of MDMA with a "horse" logo.

55. On July 27, 2004, by telephone in Belgium, defendant ITZHAK ABERGIL and UC-19 discussed negotiations for MDMA on July 26, 2004.

56. On July 29, 2004, by telephone in Belgium, defendant ITZHAK ABERGIL and UC-19 discussed problems with the drug importation into Japan, and UC-19 told ITZHAK ABERGIL that they were doing better from an organizational point of view.

57. On August 3, 2004, by telephone in Belgium, defendant ITZHAK ABERGIL asked UC-19 for an update on a deal, and told defendant ITZHAK ABERGIL that he took someone to a meeting and that he was trying to arrange the "other thing" with China.

COUNT EIGHT

[21 U.S.C. §§ 952(a) and 963]

A.    OBJECT OF THE CONSPIRACY

Beginning on an unknown date and continuing to on or about August 2004, in Los Angeles County, within the Central District of California, and elsewhere, defendant ITZHAK ABERGIL, also known as ("aka") Itzhak Abergel, aka Yitzhak Abergel, aka the Friend, aka the Big Friend, aka the Man From the South ("ITZHAK ABERGIL"), defendant ISRAEL OZIFA ("OZIFA") aka Israel the Tall, aka the Tall One, and others known and unknown to the Grand Jury, knowingly and willfully conspired and agreed with each other to commit the following offense against the United States: importation of 3,4-methylenedioxy- methamphetamine ("MDMA"), a schedule I controlled substance, into the United States, in violation of Title 21, United States Code § 952(a).

B.    MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

The means by which the object of the conspiracy was to be accomplished as alleged in Count Seven are re-alleged as if fully set out and incorporated by reference herein.

C.    OVERT ACTS

The overt acts performed in furtherance of the conspiracy alleged in Count Seven are re-alleged as if fully set out and incorporated by reference herein.

COUNT NINE

[18 U.S.C. §§ 894, 2]

From in or about May 2002 to in or about March 2004, in Los Angeles County, within the Central District of California, and elsewhere, defendant SASSON BARASHY, also known as ("aka") Sasson Barashi ("BARASHY"), defendant YORAM EL-AL, aka Yoram Alal, aka the Wounded ("EL-AL"), and others known and unknown to the Grand Jury, participated in the use of extortionate means to collect and attempt to collect an extension of credit and to punish a person for the non-repayment of an extension of credit, in that defendant BARASHY and defendant EL-AL, and others, did knowingly and unlawfully threaten, expressly and implicitly, the use of violence and other criminal means to cause harm to the person, family, reputation, and property of Eliyahu Hadad ("Hadad"), in order to collect and attempt to collect an extension of credit from Hadad, and to punish Hadad for the non-repayment thereof.

Defendant ITZHAK ABERGIL, aka Itzhak Abergel, aka Yitzhak Abergel, aka the Friend, aka the Big Friend, aka the Man From the South, and defendant MEIR ABERGIL, aka Meir Abergel, knowingly and intentionally aided, abetted, counseled, commanded, induced, procured, and caused the commission of this offense.

COUNT TEN

[18 U.S.C. §§ 1951, 2]

From in or about May 2002 to in or about March 2004, in Los Angeles County, within the Central District of California, and elsewhere, defendant SASSON BARASHY, also known as ("aka") Sasson Barashi ("BARASHY"), defendant YORAM EL-AL, aka Yoram Alal, aka the Wounded ("EL-AL"), and others known and unknown to the Grand Jury, obstructed, delayed, and affected commerce and the movement of articles and commodities in commerce by extortion, and attempted to do so, and threatened physical violence to persons and property in furtherance of a plan and purpose to commit extortion, in that defendant BARASHY and defendant EL-AL unlawfully took and obtained property and funds from Eliyahu Hadad, and attempted to do so, against his will by means of threatened force, violence, and fear of injury, immediate and future, to his person, to the person of members of his family, and to his property.

Defendant ITZHAK ABERGIL, aka Itzhak Abergel, aka Yitzhak Abergel, aka the Friend, aka the Big Friend, aka the Man From the South, and defendant MEIR ABERGIL, aka Meir Abergel, knowingly and intentionally aided, abetted, counseled, commanded, induced, procured, and caused the commission of this offense.

COUNT ELEVEN

[18 U.S.C. §§ 894, 2]

From in or about March 2003 to in or about March 2004, in Los Angeles County, within the Central District of California, and elsewhere, defendant SASSON BARASHY, also known as ("aka") Sasson Barashi ("BARASHY"), defendant YORAM EL-AL, aka Yoram Alal, aka the Wounded ("EL-AL"), and others known and unknown to the Grand Jury, participated in the use of extortionate means to collect and attempt to collect an extension of credit and to punish a person for the non-repayment of an extension of credit, in that defendant BARASHY and defendant EL-AL, and others, did knowingly and unlawfully threaten, expressly and implicitly, the use of violence and other criminal means to cause harm to the person, family, reputation, and property of Viken Keuylian ("Keuylian"), in order to collect and attempt to collect an extension of credit from Keuylian, and to punish Keuylian for the non-repayment thereof.

Defendant ITZHAK ABERGIL, aka Itzhak Abergel, aka Yitzhak Abergel, aka the Friend, aka the Big Friend, aka the Man From the South, and defendant MEIR ABERGIL, aka Meir Abergel, knowingly and intentionally aided, abetted, counseled, commanded, induced, procured, and caused the commission of this offense.

66

COUNT TWELVE

[18 U.S.C. §§ 1951, 2]

From in or about March 2003 to in or about March 2004, in Los Angeles County, within the Central District of California, and elsewhere, defendant SASSON BARASHY, also known as ("aka") Sasson Barashi ("BARASHY"), defendant YORAM EL-AL, aka Yoram Alal, aka the Wounded ("EL-AL"), and others known and unknown to the Grand Jury, obstructed, delayed, and affected commerce and the movement of articles and commodities in commerce by extortion, and attempted to do so, and threatened physical violence to persons and property in furtherance of a plan and purpose to commit extortion, in that defendant BARASHY and defendant EL-AL unlawfully took and obtained property and funds from Viken Keuylian, and attempted to do so, against his will by means of threatened force, violence, and fear of injury, immediate and future, to his person, to the person of members of his family, and to his property.

Defendant ITZHAK ABERGIL, aka Itzhak Abergel, aka Yitzhak Abergel, aka the Friend, aka the Big Friend, aka the Man From the South, and defendant MEIR ABERGIL, aka Meir Abergel, knowingly and intentionally aided, abetted, counseled, commanded, induced, procured, and caused the commission of this offense.

67

COUNT THIRTEEN

[18 U.S.C. § 1956(h)]

A.    OBJECT OF THE CONSPIRACY

Beginning on an unknown date and continuing until in or about September 2004, in Los Angeles County, within the Central District of California, and elsewhere, defendant ITZHAK ABERGIL, also known as ("aka") Itzhak Abergel, aka Yitzhak Abergel, aka the Friend, aka the Big Friend, aka the Man From the South ("ITZHAK ABERGIL"), defendant MEIR ABERGIL, aka Meir Abergel ("MEIR ABERGIL"), defendant SASSON BARASHY, also known as ("aka") Sasson Barashi ("BARASHY"), and defendant YORAM EL-AL, aka Yoram Alal, aka the Wounded ("EL-AL"), and others known and unknown to the Grand Jury, knowingly and willfully conspired and agreed with each other to commit an offense against the United States, namely:

Knowing that property involved in financial transactions represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of specified unlawful activity, that is, collections of extensions of credit by extortionate means, in violation of Title 18, United States Code, Section 894, to conduct and attempt to conduct financial transactions, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of said proceeds, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

B.    MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

The object of the conspiracy was to be accomplished in

68

substance as follows:

1.    The Grand Jury re-alleges and incorporates by reference sub-paragraphs 1(a) through 1(m) of Subsection D of Count One.

C.    OVERT ACTS

In furtherance of the conspiracy and to accomplish the object of the conspiracy, defendant ITZHAK ABERGIL, defendant MEIR ABERGIL, and defendant EL-AL, and other co-conspirators known and unknown to the Grand Jury, committed the following overt acts on or about the following dates, among others, within the Central District of California and elsewhere:

1.    The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 161 of Subsection F of Count One setting forth the overt acts of the conspiracy alleged in Count One.

69

COUNTS FOURTEEN THROUGH EIGHTEEN

[18 U.S.C. §§ 1956(a)(1)(B), 2]

On or about the dates listed below, in Los Angeles County, within the Central District of California, defendant SASSON BARASHY, aka Sasson Barashi ("BARASHY"), defendant YORAM EL-AL, aka Yoram Alal, aka the Wounded ("EL-AL"), and others known and unknown to the Grand Jury, knowing that the property involved in financial transactions represented the proceeds of some form of unlawful activity, conducted, attempted to conduct, and aided, abetted, counseled, commanded, induced, procured, and caused others to conduct such financial transactions, namely, the movement of monetary instruments by wire, delivery, and other means as set forth below, which affected interstate and foreign commerce, and involved the proceeds of specified unlawful activity, that is, collections of extensions of credit by extortionate means, in violation of Title 18, United States Code, Section 894, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity.

| COUNT | DATE | AMOUNT | DESCRIPTION |
| --- | --- | --- | --- |
| FOURTEEN | 4-30-03 | $652,852 | Wire Transfer by Viken Keuylian ("Keuylian") to California Attorney's Client Trust Account |
| FIFTEEN | 5-02-03 | $152,812 | Transfer of Cashier's Check Obtained by California Attorney Made Payable to "Gabriel Harroch" |

70

| SIXTEEN | 5-02-03 | $500,000 | Transfer of Cashier's Check Obtained by California Attorney Made Payable to "Gabriel Harroch" |
|---|---|---|---|
| SEVENTEEN | 5-06-03 | $ 45,000 | Wire Transfer by Keuylian to California Attorney's Client Trust Account |
| EIGHTEEN | 5-07-03 | $ 44,988 | Transfer of Cashier's Check Obtained by California Attorney Made Payable to "Gabriel Harroch" |

71

COUNTS NINETEEN THROUGH TWENTY-SIX

[18 U.S.C. §§ 1956(a)(1)(B), 2]

On or about the dates listed below, in Los Angeles County, within the Central District of California, defendant SASSON BARASHY, aka Sasson Barashi ("BARASHY"), defendant YORAM EL-AL, aka Yoram Alal, aka the Wounded ("EL-AL"), defendant ITZHAK ABERGIL, also known as ("aka") Itzhak Abergel, aka Yitzhak Abergel, aka the Friend, aka the Big Friend, aka the Man From the South ("ITZHAK ABERGIL"), and others known and unknown to the Grand Jury, knowing that the property involved in financial transactions represented the proceeds of some form of unlawful activity, conducted, attempted to conduct, and aided, abetted, counseled, commanded, induced, procured, and caused others to conduct such financial transactions, namely, the movement of monetary instruments by wire, delivery, and other means as set forth below, which affected interstate and foreign commerce, and involved the proceeds of specified unlawful activity, that is, collections of extensions of credit by extortionate means, in violation of Title 18, United States Code, Section 894, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity.

| COUNT | DATE | AMOUNT | DESCRIPTION |
|-------|------|--------|-------------|
| NINETEEN | 5-22-03 | $ 50,000 | Transfer of Florida Bank Cashier's Check to Florida Attorney's Client Trust Account |

72

| TWENTY | 6-18-03 | $ 50,000 | Wire Transfer by Florida Attorney to California Attorney's Client Trust Account |
|---|---|---|---|
| TWENTY-ONE | 6-24-03 | $147,000 | Wire Transfer from California Attorney's Client Trust Account to "M. Gabriel Harroch" |
| TWENTY-TWO | 9-12-03 | $250,000 | Delivery of Richard Aronsky Check to Florida Attorney's Client Trust Account |
| TWENTY-THREE | 9-19-03 | $ 25,000 | Delivery of Florida Bank Cashier's Check to Florida Attorney's Client Trust Account |
| TWENTY-FOUR | 9-25-03 | $ 8,000 | Delivery of Florida Bank Cashier's Check to Florida Attorney's Client Trust Account |
| TWENTY-FIVE | 9-25-03 | $ 3,000 | Delivery of Ilene Weltz Check to Florida Attorney's Client Trust Account |
| TWENTY-SIX | 9-30-03 | $250,000 | Wire Transfer from Florida Attorney's Client Trust Account to "M. Ben Harosh Gabriel" |

73

COUNTS TWENTY-SEVEN THROUGH THIRTY-ONE

[18 U.S.C. §§ 1957, 2]

On or about the dates listed below, in Los Angeles County, within the Central District of California, defendant SASSON BARASHY, aka Sasson Barashi ("BARASHY"), defendant ITZHAK ABERGIL, also known as ("aka") Itzhak Abergel, aka Yitzhak Abergel, aka the Friend, aka the Big Friend, aka the Man From the South ("ITZHAK ABERGIL"), and defendant YORAM EL-AL, aka Yoram Alal, aka the Wounded ("EL-AL"), and others known and unknown to the Grand Jury, knowingly engaged in, attempted to engage in, and aided, abetted, counseled, commanded, induced, procured, and caused others to engage in monetary transactions in criminally derived property of a value greater than $10,000, through a financial institution, affecting interstate and foreign commerce, that is, deposits and transfers of monetary instruments in the amounts listed below, such property having been derived from specified unlawful activity, that is, collections of extensions of credit by extortionate means, in violation of 18 U.S.C. § 894.

| COUNT | DATE | AMOUNT | DESCRIPTION |
|---|---|---|---|
| TWENTY-SEVEN | 5-22-03 | $ 50,000 | Transfer of Florida Bank Cashier's Check to Florida Attorney's Client Trust Account |
| TWENTY-EIGHT | 6-18-03 | $ 50,000 | Wire Transfer by Florida Attorney to California Attorney's Client Trust Account |
| TWENTY-NINE | 6-24-03 | $147,000 | Wire Transfer from California Attorney Client Trust Account to "M. Gabriel Harroch" |
| THIRTY | 9-12-03 | $250,000 | Delivery of Richard Aronsky Check to Florida Attorney's Client Trust Account |

74

| THIRTY-ONE | 9-30-03 | $250,000 | Wire Transfer from Florida Attorney's Client Trust Account to "M. Ben Harosh Gabriel" |
|---|---|---|---|

COUNT THIRTY-TWO

[18 U.S.C. §§ 1957, 2]

On or about the dates listed below, in Los Angeles County, within the Central District of California, defendant ITZHAK ABERGIL, also known as ("aka") Itzhak Abergel, aka Yitzhak Abergel, aka the Friend, aka the Big Friend, aka the Man From the South, defendant MEIR ABERGIL, aka Meir Abergel, and defendant YORAM EL-AL, aka Yoram Alal, aka the Wounded, and others known and unknown to the Grand Jury, knowingly engaged in, attempted to engage in, and aided, abetted, counseled, commanded, induced, procured, and caused others to engage in monetary transactions in criminally derived property of a value greater than $10,000, through a financial institution, affecting interstate and foreign commerce, that is, deposits and

///

76

transfers of monetary instruments in the amounts listed below, such property having been derived from specified unlawful activity, that is, collections of extensions of credit by extortionate means, in violation of 18 U.S.C. § 894.

| COUNT | DATE OF CHECK | AMOUNT | DESCRIPTION |
|-------|---------------|--------|-------------|
| THIRTY-TWO | 11-12-03 | $330,000 | Deposit of a Cashier's Check from the First International Bank in Tel Aviv |

A TRUE BILL

/S/
_____
Foreperson

THOMAS P. O'BRIEN
United States Attorney

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division

TIMOTHY J. SEARIGHT
Assistant United States Attorney
Chief, Organized Crime Drug Enforcement
Task Force Section

J. MARK CHILDS
Assistant United States Attorney
Organized Crime Drug Enforcement
Task Force Section

PATRICK W. MCLAUGHLIN
Assistant United States Attorney
Organized Crime Drug Enforcement
Task Force Section

77

I hereby attest and certify on 8/19/08
that the foregoing document is a full, true
and correct copy of the original on file in
my office, and in my legal custody.

CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

_____
DEPUTY CLERK



(1099)