UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

---

HONORABLE GARY KLAUSNER, DISTRICT JUDGE PRESIDING

---

UNITED STATES OF AMERICA,       )
                                )
        PLAINTIFF,              )
                                )
        VS.                     )   CASE NO. CR 04-00373(A)-RGK
                                )   2:06 P.M. TO 2:29 P.M.
HAI WAKNINE,                    )
                                )
        DEFENDANT.              )
_____)

REPORTER'S TRANSCRIPT OF PROCEEDINGS
MOTIONS CALENDAR

LOS ANGELES, CALIFORNIA
MONDAY, SEPTEMBER 26, 2011

MARGARET J. BABYKIN
COURT REPORTER
442 - U. S. DISTRICT COURTHOUSE
312 NORTH SPRING STREET
LOS ANGELES, CALIFORNIA  90012
(626) 963-0566

2

APPEARANCES:

ON BEHALF OF THE PLAINTIFF:

          ANDRE BIROTTE, JR.
          ROBERT DUGDALE
          CHIEF, CRIMINAL DIVISION
          ASSISTANT UNITED STATES ATTORNEY
          BY:   PATRICK MC LAUGHLIN
          ASSISTANT UNITED STATES ATTORNEY
          312 NORTH SPRING STREET
          LOS ANGELES, CALIFORNIA   90012

ON BEHALF OF THE DEFENDANT:

          KENNER & GREENFIELD
          BY:   DAVID KENNER
                BRETT GREENFIELD
                ATTORNEYS AT LAW
          16633 VENTURA BOULEVARD
          SUITE 800
          ENCINO, CALIFORNIA   91436

3

I N D E X

CR 04-00373(A)-RGK                              SEPTEMBER 26, 2011

HEARING:   SENTENCING

4

LOS ANGELES, CALIFORNIA; MONDAY, SEPTEMBER 26, 2011; 2:06 P.M.

THE CLERK:  CALLING CALENDAR ITEM NUMBER 12, CASE NUMBER CRIMINAL 04-00373(A)-RGK, UNITED STATES OF AMERICA VERSUS HAI WAKNINE.

COUNSEL, PLEASE STATE YOUR APPEARANCES.

MR. MC LAUGHLIN:  GOOD AFTERNOON, YOUR HONOR.

PAT MC LAUGHLIN APPEARING ON BEHALF OF THE UNITED STATES.

MR. KENNER:  GOOD AFTERNOON, YOUR HONOR.

DAVID KENNER AND BRETT GREENFIELD ON BEHALF OF MR. WAKNINE, WHO IS PRESENT ON BOND.

THE COURT:  OKAY.  IN THIS PARTICULAR MATTER THE COURT HAS READ AND CONSIDERED THE PRESENTENCE REPORT, ALSO, ALL THE NUMEROUS DOCUMENTS THAT HAVE BEEN SUBMITTED BY BOTH THE DEFENSE AND THE PLAINTIFF.

MY UNDERSTANDING IS THAT THE AGREED-UPON SENTENCE HERE -- AND HELP ME OUT HERE -- IT'S 57 MONTHS IS MY UNDERSTANDING.

IS THAT CORRECT?

MR. MC LAUGHLIN:  YES, YOUR HONOR.

THE COURT:  IS THAT CORRECT, COUNSEL?

MR. KENNER:  THAT'S CORRECT.

THE COURT:  I UNDERSTAND HE'S SERVED MORE THAN 57 MONTHS.

MR. KENNER:  YES, HE HAS, YOUR HONOR.

5

THE COURT:  BUT WE STILL WANT 57 MONTHS --

MR. MC LAUGHLIN:  WELL, JUST TO CLARIFY.  HE'S -- WITH GOOD TIME WORKED -- WITH A 15 PERCENT CREDIT, THE SENTENCE -- THE AMOUNT OF TIME HE'D BE CREDITED FOR WOULD BE WELL BEYOND 57 MONTHS.  I THINK HE'S SERVED IN TERMS OF ACTUAL TIME IN --

THE COURT:  THE ONLY REASON I ASK IS BECAUSE THE LOW END OF THIS WOULD BE 63, WHICH WOULD BE THE NORMAL SENTENCE IMPOSED.  BUT I THINK I STILL COULD GIVE IT AS TIME SERVED. BUT THIS IS A BINDING PLEA AGREEMENT.  SO, IF YOU SAY 57, I'LL SAY 57.  BUT I THINK 63 WOULD BE IN LINE WITH THE GUIDELINES AND STILL ACCOMPLISH THE SAME THING AS THE AGREED-UPON PLEA.

MR. MC LAUGHLIN:  WELL, WE WOULD ASK THE COURT TO GO ALONG WITH THE AGREEMENT AND IMPOSE THE SENTENCE OF 57 MONTHS.

THE COURT:  OKAY.

MR. MC LAUGHLIN:  NOW, LET ME JUST CLARIFY ONE THING.

THE COURT:  LET ME JUST MAKE SURE.

COUNSEL AGREES.

MR. KENNER:  YES, YOUR HONOR.

THE COURT:  OKAY.  GO AHEAD.

MR. MC LAUGHLIN:  THE ONE POTENTIAL WRINKLE IS THIS, THAT MY EXPERIENCE HAS BEEN THAT SOMETIMES THE BUREAU OF PRISONS WHEN THE ACTUAL TIME IN CUSTODY DOES NOT EQUATE TO THE TIME THAT THE COURT IMPOSES -- IN OTHER WORDS, LIKE I SAID, HE'S DONE ABOUT 54, 55 MONTHS.  IF THE COURT IMPOSES A SENTENCE

OF 57 MONTHS, THE BUREAU OF PRISONS MIGHT COME BACK TO YOU AND SAY, WELL, WAIT A MINUTE.  HE STILL OWES US "X" AMOUNT OF TIME.  I DON'T THINK THEY WILL BECAUSE ONCE THEY DO THE CALCULATIONS THEY'LL OBVIOUSLY ARRIVE AT THAT NUMBER.

THE SOLUTION I HAVE FOUND THAT HAS WORKED IN OTHER CASES IS WITH THE MUTUAL UNDERSTANDING BETWEEN THE COURT, THE GOVERNMENT AND THE DEFENSE THAT, IN FACT, THIS IS A 57-MONTH SENTENCE, THAT TO OBVIATE THE SITUATION IS IF THE COURT IMPOSES A SENTENCE OF TIME SERVED.  IN OTHER WORDS --

THE COURT:  SO, SAY 57 MONTHS.  TIME SERVED.

MR. MC LAUGHLIN:  RIGHT.  THEN, THAT TENDS TO SOLVE THE PROBLEM.  BECAUSE, OTHERWISE, LIKE I SAID, YOU MAY GET SOME COMMUNICATION FROM THE BUREAU OF PRISONS SAYING, WAIT A MINUTE, JUDGE KLAUSNER.  YOU KNOW.

THE COURT:  OKAY.

MR. MC LAUGHLIN:  SO, THAT WOULD BE MY ONLY COMMENT BASED UPON PRIOR EXPERIENCE IN SIMILAR TYPE OF SITUATIONS.

THE COURT:  OKAY.

MR. KENNER:  WE JOIN IN THAT REQUEST, YOUR HONOR.

THE COURT:  WITH THAT, AND UNDERSTANDING THAT THIS IS AN AGREED-UPON BINDING PLEA AGREEMENT, IF I AM NOT MISTAKEN UNDER 11 --

IS THAT CORRECT?

MR. MC LAUGHLIN:  YES, YOUR HONOR.

THE COURT:  11(C)1(C).  AND THE COURT FEELS THAT THAT

IS -- THAT THIS IS AN APPROPRIATE SENTENCE.

NOW, THE ISSUE OF RESTITUTION IS OUT THERE.  BUT WE'RE GOING TO HAVE THAT HEARING IN DECEMBER.

MR. KENNER:  RIGHT.  AND, YOUR HONOR, JUST SO THAT THE RECORD IS CLEAR, SINCE UNDER RULE 32(D) THE PRESENTENCE REPORT MUST CONTAIN INFORMATION ON RESTITUTION, THE GOVERNMENT HAS STILL FAILED TO YET FILE ITS POSITION ON RESTITUTION.

SO, WHILE WE ARE IN AGREEMENT THAT THE COURT IS GOING TO ANNOUNCE ITS INTENT TO IMPOSE THE SENTENCE THAT YOU'VE INDICATED, THE SENTENCING CANNOT BE COMPLETED UNTIL THE COURT MAKES A RULING ON THE RESTITUTION THAT'S NOW SCHEDULED FOR DECEMBER 5TH.

THE COURT:  THE SENTENCING WILL BE AMENDED AS SOON AS WE IN DECEMBER OR WHENEVER IT IS HAVE THE RULING ON THE RESTITUTION.

ARE ALL THE OTHER CONDITIONS OF SUPERVISED RELEASE --

MR. KENNER:  AND, YOUR HONOR, BEFORE YOU DO IMPOSE THE SENTENCE, MR. --

THE COURT:  WELL, I'M NOT IMPOSING AT THIS TIME.  I'M JUST SAYING HAVE YOU BEEN PROVIDED WITH THE RECOMMENDED SUPERVISED RELEASE CONDITIONS.

MR. KENNER:  YES, YOUR HONOR.

THE COURT:  OKAY.  OKAY.

AND YOU HAD A QUESTION NOW.

MR. KENNER:  MR. WAKNINE HAS ASKED FOR PERMISSION TO

BRIEFLY ADDRESS THE COURT.

THE COURT:  OH, HE HAS TO.  NO -- OR, EXCUSE ME, HE HAS TO BE GIVEN THAT OPPORTUNITY.  NO QUESTION.

IS THERE ANYTHING ELSE THOUGH AS FAR AS COUNSEL ARE CONCERNED?

MR. MC LAUGHLIN:  NO, YOUR HONOR.  THE GOVERNMENT HAS NO OBJECTIONS TO THE PROPOSED TERMS OF SUPERVISED RELEASE.

THE COURT:  CONDITIONS.  OKAY.

MR. KENNER:  WE HAVE NO OBJECTIONS TO THOSE PROPOSED TERMS.

AND, AGAIN, I JUST WANT THE RECORD TO REFLECT THE UNDERSTANDING THAT THE SENTENCING WILL TAKE PLACE WHEN THE RESTITUTION HEARING IS COMPLETED ON DECEMBER 5TH.

THE COURT:  THE SENTENCING TAKES PLACE NOW, BUT THE JUDGMENT IS GOING TO BE MODIFIED TO INCLUDE THE APPROPRIATE AMOUNT OF RESTITUTION.

OKAY.  MR. WAKNINE, DO YOU WISH TO BE HEARD?

THE DEFENDANT:  YES, YOUR HONOR.

THE COURT:  SIR.

THE DEFENDANT:  GOOD AFTERNOON, YOUR HONOR.

FIRST OF ALL, I'D LIKE -- I HAVE TOURETTES.  SO, SOMETIMES I TALK A LITTLE EXCITED.  I APOLOGIZE FOR THAT.

THE COURT:  OKAY.  AS LONG AS YOU DON'T TALK TOO FAST FOR THE REPORTER.

THE DEFENDANT:  I'LL TRY TO TALK AS SLOW AS I CAN.

I WANT TO TAKE A FEW MINUTES AND KIND OF GIVE YOU A BACKGROUND OF THE SITUATION.  AND THEN I WANT TO REQUEST IF YOUR HONOR WOULD CONSIDER IT AT THE END.

IS THAT OKAY?

THE COURT:  OKAY.

THE DEFENDANT:  THIS CASE STARTED BACK IN 2002. PRIOR TO THIS CASE, I WAS INVOLVED IN REAL ESTATE INVESTMENTS WITH MY UNCLE AND A FEW DIFFERENT PARTNERS.  WE OWNED MANY BUILDINGS IN DOWNTOWN LOS ANGELES -- THE WILTERN THEATER, THE CALIFORNIA MART, THE JEWELRY MART, THE PHILIPPINE NATIONAL BANK -- THE PHILIPPINE NATIONAL BANK, THE CAL MART -- THE JEWELRY MART AND THE CALIFORNIA APPAREL MART, THE UNION BANK BUILDING ON 4TH AND --

THE COURT:  YOU'RE RIGHT.  YOU TALK VERY FAST.  AND SO --

THE DEFENDANT:  I'M SORRY.

THE COURT:  -- JUST SLOW DOWN A LITTLE BIT.  OKAY.

THE DEFENDANT:  ON 4TH AND FIG.  THE STANDARD OIL BUILDING ON OLYMPIC BOULEVARD.

EVERYTHING WAS PRETTY MUCH PERFECT IN MY LIFE TILL I WAS TRYING TO ACQUIRE A PIECE OF LAND ON WILSHIRE BOULEVARD, WHICH I ACQUIRED FROM A LAMBORGHINI DEALERSHIP NAMED -- THE OWNER WAS VIC KEUYLIAN.

AT THAT POINT I MET ANOTHER INDIVIDUAL NAMED GABRIEL BENHAROSH FROM ISRAEL WHO -- WHO INDICATED HE WANTED TO INVEST

IN PROPERTIES IN LOS ANGELES.  AND I TOLD HIM, YOU KNOW, I'M NOT DOING ANYTHING WITH MY UNCLE AND MY PARTNERS.  IT'S PRETTY MUCH -- THEY PUT ALL THE MONEY.  THE BANKS FINANCE US.

THE COURT:  OKAY. GO AHEAD.

THE DEFENDANT:  AND I SAID I AM WORKING ON A DEAL ON LANDFAIR.  IT'S AN APARTMENT BUILDING IN UCLA, WHICH HE SAW. HE THOUGHT IT WAS A GOOD INVESTMENT.  WE LATER WENT TO SEE VIC -- VICTOR KEUYLIAN WHO OWNED THE DEALERSHIP THAT WAS PUTTING ANOTHER DEALERSHIP ON MY LOT.  AND BETWEEN THEM AND ME PRESENT WE AGREED TO INVEST WITH HIM ON BUYING SOME AUTOMOBILES AND BRINGING THEM FROM EUROPE, CONVERTING THEM AND SELLING THEM AND MAKING A PROFIT.

GABRIEL INVESTED THE MONEY.  A YEAR LATER THERE WAS PROBLEMS PAYING THE MONEY BACK.  IT GOT VERY BAD.  AT THAT POINT MY BROTHER HAD BORROWED SOME MONEY, HAD GOTTEN INTO TROUBLE WITH SOME MONEY IN ISRAEL TOO.  THIS THING GOT OUT OF PROPORTION.  I TRIED STOPPING IT.  WHEN I REALIZED IT WAS OVER MY HEAD, THAT IT WAS GETTING TOO BAD FOR EVERYTHING, I MADE THE ODDS AND SAID, LOOK, I'M SUCCESSFUL HERE.  WHY WOULD I WANT TO DO THIS.  I SAT DOWN WITH AN ASSOCIATE, WHATEVER THE BILLS ARE, WHATEVER THE PROBLEMS ARE, I'LL PAY EVERYTHING.  I'LL EVEN PAY VICTOR KEUYLIAN'S BILL.  I BELIEVE WE GAVE HIM 950,000 TO BE EXACT.  HE GAVE BACK 643 AND SOME ACCOUNTING.  I ENDED UP MAKING -- I'M SORRY.

THE COURT:  THAT'S OKAY.  THAT'S OKAY.

11

THE DEFENDANT:  I ENDED UP MAKING UP THE DIFFERENCE OF --

THE COURT:  YOU ARE DICTATING TO SOMEONE WHO IS TRYING TO TAKE SHORTHAND.

THE DEFENDANT:  I'M SORRY.

THE COURT:  THAT'S OKAY.

GO AHEAD.

THE DEFENDANT:  AT THAT POINT, THIS IS ABOUT 2003, I COVERED ALL THE DEBTS.  I COVERED OVER A MILLION DOLLARS OF MY BROTHER'S DEBTS.  I COVERED ALMOST $3 MILLION TO GABRIEL BENHAROSH.  WE GOT INDICTED A WEEK BEFORE MARCH 24TH BEFORE HE GOT INDICTED.  I FLEW OUT TO CANADA.  I MET WITH HIM.  I SAID GABBY, I WANT NOTHING TO DO WITH YOU.  THIS THING HAS GOTTEN OUT OF HAND.  I HAVE MY LIFE.  I WANT TO GO BACK TO MY LIFE. IT'S NOT A PART OF ME.  I'M GONE.

I CAME BACK HERE.  HE GOT INDICTED.  HE GOT ARRESTED IN CANADA -- ULTIMATELY CAME BACK HERE.  WE GOT ARRESTED.  WE HAD A HEARING.  I WAS RELEASED ON BAIL.  I WAS FIGHTING MY CASE.  TOWARDS DECEMBER OF THAT YEAR WHILE WE WERE FIGHTING GABRIEL BENHAROSH DECIDED TO BE A COOPERATING WITNESS AGAINST ME AND TO TESTIFY AGAINST ME.

PRIOR TO THAT BEFORE HE -- AS HE SIGNED HIS DEAL WITH THE GOVERNMENT, HE PUT RUMORS IN ISRAEL THAT I WAS COOPERATING AGAINST HIM AND AGAINST EVERYBODY ELSE -- THE OTHER CO-DEFENDANTS.

12

MRS. DIANA RUEDA, WHO IS THE CHIEF OFFICER OF THE DEA, CONTACTED ME AND SAID ON THE TELEPHONE -- CONTACT MY ATTORNEY AND SAID YOUR LIFE IS IN DANGER.  YOU NEED TO COME IN.  I SAID MY ATTORNEY IS OUT OF TOWN.  WE CONFERENCE CALLED DAVID ON HIS CRUISE.  AND SHE SAID WHAT CAN WE DO FOR YOU.  I SAID LET ME HIRE BODYGUARDS.  I'M HERE TO FIGHT MY CASE.  I'M GOING TO BE OUT HERE UNTIL I FIGHT IT.  AND I HIRED SIX BODYGUARDS AROUND THE CLOCK.  ONE GENTLEMAN WAS OFFICER BILL CARTER, WHO WAS ACTING CHIEF OF POLICE OF THE L.A.U.S.D.  HE WAS HEAD OF SECURITY THERE.  I HAD A FULL AROUND-THE-CLOCK SECURITY TEAM ALONG WITH ALL THE ATTORNEYS TO FIGHT THIS CASE.

I KNEW THAT I HAD -- WITH THE PEOPLE INVOLVED IN THIS CASE, I HAD TO SHOW THAT I WASN'T COOPERATING AGAINST ANYBODY. I WAS FIGHTING THE CASE.  WHATEVER THE TIME WOULD HAVE BEEN, I WOULD HAVE TAKEN IT AND KEPT ON GOING.  CUT AWAY FROM ALL LOSSES.

ULTIMATELY, MANY THINGS HAPPENED IN THIS CASE.  I THINK YOUR HONOR IS AWARE OF WHAT HAPPENED.  WE WON THE APPEAL.  AND WE CAME BACK AND FORTH.  EVEN AS LONG AS MY LAST APPEAL, MY LAST SENTENCING DATE ON JULY -- JULY 1ST, 2,000 -- 2010 -- OR 2010 -- GABRIEL BENHAROSH, WHO WAS A COOPERATING WITNESS AGAINST ME.  HE GOT NO JAIL TIME.  HE WAS IN THE AUDIENCE.  AND I WAS IN HANDCUFFS.  AND HE DOES THIS TO MY MOM. (INDICATING.)  THE MAN WAS CONVICTED OF EIGHT MURDERS IN ISRAEL.  IT'S NOT A CHARACTER THAT -- ULTIMATELY THE REST OF

THE CO-DEFENDANTS CAME HERE.  I THINK THE U.S. AUTHORITIES TRIED TO HAVE THEM COOPERATE AGAINST THEM TOO.  AND HE KNEW I WOULDN'T RETALIATE.  SO, THAT'S WHY HE COOPERATED AGAINST ME. HE WOULD NOT COOPERATE AGAINST THEM. OTHER CO-DEFENDANTS WOULDN'T.  AND THEY ULTIMATELY DEPORTED HIM.

THIS CASE HAS BEEN TREMENDOUS ON ME.  I MADE A MISTAKE, YES.  THE PEOPLE I DEALED WITH, I PAID DEARLY, YOUR HONOR.  I'VE LOST TENS AND TENS OF MILLIONS OF DOLLARS.

I CAME BACK HERE.  YOUR HONOR GRANTED ME BAIL.  I CAME -- THE SIX MONTHS I'VE BEEN HERE, I RECONNECTED WITH ALL MY OLD PARTNERS.  I'M WORKING AGAIN.  I'M DOING A LOT OF THINGS AGAIN.

EVERYTHING -- THIS CASE -- ULTIMATELY WHAT I'M ASKING FOR IS IF YOUR HONOR CAN CHANGE THE SENTENCE TO SENTENCE ME TO -- TO -- IF YOUR HONOR WOULD CONSIDER IF I WAIVED MY 57 MONTHS OF BACK TIME AND BE SENTENCED TO ONE DAY CREDIT TIME SERVED.  THIS WAY MY PARENTS AND FIANCE WOULDN'T LEAVE LOS ANGELES -- MOVE BACK TO ISRAEL WITH ME.  I HAVE BEEN HERE SINCE I WAS SEVEN YEARS OLD -- FOR OVER 30 YEARS.  IF YOU CAN TAKE IN YOUR HEART TO MAKE THIS ADJUSTMENT WHICH HAS THE SAME NET EFFECT -- I KNOW --

THE COURT:  I KNOW -- BECAUSE I CAN TAKE IT INTO CONSIDERATION IF YOU WANT TO OPEN UP THE PLEA AGAIN.  BUT I DON'T --

THE DEFENDANT:  NO, I DON'T WANT TO -- I DON'T WANT

14

TO CHANGE ANYTHING.  I DON'T WANT TO DISRESPECT THE GOVERNMENT. THE GOVERNMENT MADE A PLEA.  I MADE A -- YOUR HONOR, I MADE --

THE COURT:  LET'S GO ON.  THIS WAS A BINDING PLEA AGREEMENT THAT EVERYBODY AGREED ON TO BE THE 57 MONTHS.  I DON'T CARE IF YOU WANT TO OPEN IT UP AGAIN.  AND THEN I CAN SENTENCE TO WHATEVER I THINK IS APPROPRIATE.

BUT IF WE ARE HONORING THE BINDING PLEA AGREEMENT, THEN, WE HAVE TO HONOR THE BINDING PLEA AGREEMENT.  IF WE DON'T WANT TO HONOR IT, THAT'S FINE TOO.

THE DEFENDANT: I DO -- YOUR HONOR, I DO WANT -- THAT'S WHAT I'M ASKING IF YOUR HONOR --

THE COURT:  OKAY.  THEN I WON'T BE ABLE TO CHANGE -- IF I HONOR THE PLEA AGREEMENT, I WON'T BE ABLE TO CHANGE THAT.

THE DEFENDANT:  I JUST WANT TO -- I UNDERSTAND.  LET ME JUST FINISH.  AND THEN YOUR HONOR CAN DO WHAT HE THINKS IS APPROPRIATE.

THE COURT:  SURE.

THE DEFENDANT:  AT LEAST IT GIVES ME A CHANCE WITH IMMIGRATION.

IF I GET --

THE COURT:  LET ME SAY TO YOU THE PROBLEM.

YOU ARE ONE OF THE PARTIES THAT HAVE TO AGREE ON THIS BINDING PLEA AGREEMENT.

THE DEFENDANT:  I AGREE WITH IT 100 PERCENT.  I JUST THOUGHT THAT MAYBE YOUR HONOR --

THE COURT:  GO AHEAD.

THE DEFENDANT:  YOUR HONOR, I'M NOT -- YOUR HONOR, THE GOVERNMENT WHEN I WAS IN -- WHEN THE CASE GOT OVERTURNED IN OCTOBER, MY ATTORNEY CAME IN MY ROOM.  HE SAID WE'RE GOING BACK TO TRIAL.  WE'RE GOING TO FIGHT THIS THING.  ULTIMATELY, HE SAID IT WOULD BE A VERY EXPENSIVE TRIAL AGAIN.  THE GOVERNMENT IS OFFERING YOU A PLEA OF NO MORE JAIL TIME.  YOU'LL BE OUT. AND IT WILL GIVE YOU A CHANCE --

(DEFENSE COUNSEL AND DEFENDANT CONFERRING.)

THE DEFENDANT:  THE GOVERNMENT SAID -- HE SAID THE GOVERNMENT IS PREPARED TO GIVE YOU A TIME-SERVED DEAL.  YOU WOULDN'T HAVE TO GO BACK TO A NEW TRIAL.  THEY'LL EVEN STIPULATE TO A BAIL PENDING YOUR RELEASE HERE.  YOU GO TO IMMIGRATION AND FIGHT IT, WHICH WE HIRED THREE OF THE BIGGEST FIRMS HERE TO HELP US WITH THIS THING.  AND ATTORNEY JOSEPH SANDOVAL IS THE LEAD ATTORNEY ON THE IMMIGRATION SITUATION.

THE CASE THAT'S INVOLVED, YOUR HONOR, INVOLVES A LOT OF INTERESTING CHARACTERS.  AND IT INVOLVES SUCH A BIG CASE THAT HAS -- I MEAN, TO COMPREHEND IT IS SUCH A -- MY SIMPLE INVOLVEMENT IN IT INVOLVES TEN OTHER PEOPLE.  AND THIS THING HAS GONE -- BLOWN OUT OF PROPORTIONS.  IF I DO GO BACK TO ISRAEL, YOUR HONOR, IT'S NOT A GOOD SITUATION.  MR. GABRIEL BENHAROSH IS MAD TO THE CEILING THAT I WENT ALL THE WAY TO TRIAL.  AND I MADE HIM TESTIFY AGAINST ME -- I MADE HIM TAKE ON THE STAND.  AND THAT WAS MY KEY PLAY IN THIS THING BECAUSE ONCE

16

HE GOES ON THE STAND I KNEW THAT HE WOULDN'T BE ABLE TO DO ANYTHING AGAINST ME.  THAT'S WHY I WAS SAFE IN AMERICA.  I'VE BEEN HERE -- I MADE A MISTAKE.  I PAID DEARLY, YOUR HONOR.  AND MY WHOLE FAMILY HAS TO MOVE BACK TO ISRAEL NOW.

EVEN IF YOUR HONOR SAYS YOUR BINDING DEAL, MAYBE YOU CAN CONSIDER IT AND JUST THINK ABOUT IT OF A WAY THAT THE GOVERNMENT IS SUFFICED AND WE'RE SUFFICED MAYBE TO THE RESTITUTION HEARING.  I MEAN, I'M HERE.  I'M NOT GOING ANYWHERE.  I'LL BE AT EVERY COURT APPEARANCE YOU ORDER ME TO. MAYBE YOU CAN THINK OF A -- I ALSO HAVE TO PAY RESTITUTION OF $10,000 A MONTH, WHICH I'LL START IMMEDIATELY.  I NEED TO BE HERE TO BE ABLE TO -- AND THERE'S A FINE AND THE RESTITUTION TO ARGUE WITH.  AND THERE'S A 10,000-DOLLAR -- I BELIEVE THAT THE GOVERNMENT AGREED TO A 10,000-DOLLAR PAYMENT A MONTH.

IS THAT CORRECT, MR. MC LAUGHLIN?

MR. MC LAUGHLIN:  (NODDING.)

THE DEFENDANT:  AND, ALSO, WE HAVE A FINE TO ARGUE WITH THAT -- A RESTITUTION FINE.  AND I -- WITH WHATEVER HAPPENS, I INTEND TO PAY ALL MY -- YOU KNOW, EVERYTHING I WAS SUPPOSED TO AND FINISH EVERYTHING UP.

IF YOUR HONOR WOULD MAYBE JUST CONSIDER IT AND THINK ABOUT IT OF A WAY, IF NOT, DO AS YOU -- MAYBE TO THE RESTITUTION HEARING AND APPLY SENTENCING JUST TO THINK ABOUT --

(DEFENSE COUNSEL AND DEFENDANT CONFERRING.)

THE DEFENDANT:  TO GIVE ME TIME -- TO GIVE YOU

WHATEVER -- JUST TO SHOW YOU WHAT I WAS TALKING ABOUT IN A NARRATIVE. I MEAN, AND I THINK MR. MC LAUGHLIN CAN VERIFY HOW DANGEROUS THIS CASE IS, HOW BAD IT WAS. I WOULDN'T COOPERATE. I WENT ALL THE WAY TO TRIAL JUST TO AVOID, JUST TO AVOID, YOU KNOW, TURMOIL THAT HAPPENED WITH MY MOM AND MY BROTHER IN ISRAEL. AND I TOOK EVERYTHING ON ME. I PAID MILLIONS -- MILLIONS OF DOLLARS OUTSIDE TO COVER THIS AND IN THE COURTROOM TO FINISH EVERYTHING OUT, YOUR HONOR.

THE COURT: OKAY. I APPRECIATE YOUR REQUEST AND YOUR SENTIMENT. BUT, AGAIN, IT'S A VERY BLACK-AND-WHITE ISSUE. AND THAT IS, IF YOU WISH TO PROCEED WITH THE BINDING PLEA AGREEMENT, I HAVE INDICATED THAT I WOULD GO ALONG WITH IT. AND YOU KNOW WHAT THAT IS.

IF YOU DO NOT WISH TO HAVE THAT BINDING PLEA AGREEMENT, IF YOU WISH TO ARGUE TO SOMETHING OUTSIDE OF THAT AGREEMENT, WHICH IS WHAT YOU'RE DOING, THEN, I HAVE TO SET ASIDE THE ENTIRE PLEA AND PLEA AGREEMENT. AND WE START ALL OVER AGAIN. AND IT'S OPEN, SO.

MR. KENNER: YOUR HONOR, MAY I PERHAPS --

THE COURT: SURE.

MR. KENNER: -- INTERCEDE HERE.

YOUR HONOR, THIS PLEA WILL NOT BE COMPLETE UNTIL THE DECEMBER 5TH DATE UPON --

THE COURT: I'M SORRY, COUNSEL. YOU'RE WRONG. THIS PLEA WILL NOT BE COMPLETE?

18

MR. KENNER:  WELL, THE SENTENCING WILL NOT BE COMPLETE.  YOU WILL HAVE ACCEPTED THE PLEA, BUT THE JUDGMENT AND COMMITMENT CAN'T BE FINISHED UNTIL THE RESTITUTION --

THE COURT:  I THINK YOU'RE WRONG ON THAT.

MR. KENNER:  -- IS DECIDED.

THE COURT:  HE CAN BE SENTENCED WITH THE COURT RESERVING THE ISSUE OF RESTITUTION UNTIL A LATER DATE.  BUT THE SENTENCE WOULD BE IMPOSED TODAY.

MR. KENNER:  BUT THAT'S NOT A BINDING SENTENCE AS I UNDERSTAND IT FROM MR. MC LAUGHLIN.

THE COURT:  IT CAN BE AMENDED BY THE COURT.

MR. MC LAUGHLIN:  YOUR HONOR, HERE'S WHAT I THINK HAS HAPPENED IS THAT THE DEFENDANT IS OBVIOUSLY VERY CONCERNED ABOUT IMMIGRATION CONSEQUENCES.

THE COURT:  OKAY.

MR. MC LAUGHLIN:  WHAT HE'S CONCERNED ABOUT IS THAT -- IS THAT THE COURT ISSUES WHAT I WOULD SAY IS THE NORMAL STANDARD JUDGMENT AND COMMITMENT ORDER TODAY --

THE COURT:  RIGHT.

MR. MC LAUGHLIN:  -- THAT IMMIGRATION COULD BEGIN PROCEEDINGS BASED UPON THE FINAL JUDGMENT, IF YOU WILL.

WHAT I HAVE SAID -- WHAT I HAVE EXPLAINED TO MR. KENNER IS MY UNDERSTANDING ANYWAY -- AND, AGAIN, I'M NOT AN IMMIGRATION LAWYER.  SO, I'M A LITTLE RELUCTANT TO GO OUT ON A LIMB ON THIS -- IS I DON'T THINK THAT CAN HAPPEN UNTIL THE

19

FINAL AMENDED, IF YOU WILL, JUDGMENT AND COMMITMENT ORDER IS FINAL BECAUSE OBVIOUSLY THERE'S STILL AN ISSUE ABOUT RESTITUTION.  AND IT WON'T BE DECIDED UNTIL DECEMBER THE 5TH.

THE COURT:  THAT'S CORRECT.

MR. MC LAUGHLIN:  SO, I DON'T -- AND, AGAIN, I'M NOT AN IMMIGRATION LAWYER, BUT IF THEY CALL ME AND ASK FOR AN OPINION, I WOULD SAY THERE'S NOTHING THEY CAN DO TO START UNTIL THE CASE IS FINALLY OVER, IF YOU WILL.  AND THAT WON'T OCCUR UNTIL DECEMBER THE 5TH.

I MEAN, I THINK THAT IS --

THE COURT:  THAT'S CORRECT.  THAT PART IS CORRECT.

MR. MC LAUGHLIN:  -- DRIVING THE REQUEST HERE.  AND I THINK IT'S WHAT DRIVING FRANKLY MR. WAKNINE'S REQUEST ABOUT THE ONE DAY --

THE COURT:  OKAY.  WELL, IF YOU'RE TALKING ABOUT THE SENTENCE NOT BEING COMPLETE BECAUSE THE RESTITUTION HAS NOT BEEN DETERMINED, YOU'RE CORRECT.

MR. KENNER:  THAT'S ALL --

THE COURT:  IF YOU'RE TALKING ABOUT THE DEFENDANT HAVING TO STAY HERE UNTIL THAT PERIOD OF TIME WHEN I MAKE THAT DETERMINATION, THAT'S CORRECT TOO.

MR. MC LAUGHLIN:  RIGHT.

THE COURT:  YES.

MR. KENNER:  YES.

THE COURT:  OKAY.

20

MR. KENNER:  SO, WE ARE IN AGREEMENT.  HE STAYS HERE --

THE COURT:  YES.

MR. KENNER:  -- FOR THAT PERIOD OF TIME AND SHOWS UP AT THAT TIME --

THE COURT:  HE IS ORDERED TO REMAIN WITHIN THE UNITED STATES.

MR. KENNER:  YES.

THE COURT:  THE COURT WILL MAKE THAT ORDER UNTIL THE RESTITUTION HEARING IS OVER.

MR. KENNER:  THANK YOU, YOUR HONOR.

THE COURT:  OKAY.  ANYTHING ELSE?  EVERYBODY AGREES TO THE BINDING PLEA AGREEMENT AT THIS TIME.

IS THAT CORRECT?

MR. MC LAUGHLIN:  THE GOVERNMENT IS STANDING BY THE BINDING PLEA AGREEMENT.

THE COURT:  OKAY.

(DEFENSE COUNSEL CONFERRING.)

MR. KENNER:  SO, YOUR HONOR, THE DEFENDANT WILL REMAIN ON BOND AND --

THE COURT:  YES.

MR. KENNER:  -- AND HE WILL BE ORDERED TO REPORT TO THIS COURT ON THE DECEMBER 5TH RESTITUTION HEARING DATE.

THE COURT:  THAT'S CORRECT -- AND ORDERED TO REMAIN IN THE UNITED STATES UNTIL THAT DATE.

MR. KENNER:  YES.

(DEFENSE COUNSEL AND DEFENDANT CONFERRING.)

THE DEFENDANT:  OUT OF CUSTODY?

THE COURT:  HE'S --

THE DEFENDANT:  OUT OF CUSTODY, RIGHT?

THE COURT:  I'M SORRY?

THE DEFENDANT:  OUT OF CUSTODY, YOUR HONOR?

THE COURT:  UNLESS YOU WANT TO GO INTO CUSTODY.

THE DEFENDANT:  OH, NO, SIR.  THANK YOU.

THE COURT:  OKAY.

THE DEFENDANT:  THANK YOU VERY MUCH, YOUR HONOR.

THE COURT:  OKAY.  LAST TIME.  DOES ANYBODY WANT TO WITHDRAW FROM THE BINDING PLEAD AGREEMENT?  OKAY.  NOT HEARING ANYBODY ASKING TO WITHDRAW, THEN, THE COURT IS GOING TO MAKE THE FOLLOWING FINDINGS AND DETERMINATIONS:

FIRST OF ALL, THAT THIS IS A LEVEL 25.  THE GUIDELINE RANGE WOULD BE BETWEEN 63 AND 78 MONTHS.  A CRIMINAL HISTORY OF II.

THE COURT UNDER ALL THE CONDITIONS OF THIS CASE FINDS THAT THE BINDING PLEA AGREEMENT IS APPROPRIATE AND COULD LIVE WITH AND DOES ACCEPT THE 57 MONTHS.

IT IS ORDERED THAT THE DEFENDANT SHALL PAY TO THE UNITED STATES A SPECIAL ASSESSMENT OF $100, WHICH IS DUE IMMEDIATELY.

IT IS ORDERED THE DEFENDANT SHALL PAY RESTITUTION IN

22

THE TOTAL AMOUNT TO BE DETERMINED AT THE DECEMBER 5TH, 2011 HEARING.

AND IT'S ORDERED THAT THE -- WELL, I'LL GO ON.

THE DEFENDANT SHALL COMPLY WITH THE RULES -- EXCUSE ME, SHALL COMPLY WITH GENERAL ORDER 1-5.

IT IS ORDERED THAT THE DEFENDANT SHALL PAY THE UNITED STATES A TOTAL FINE OF $1,000 -- $100,000, WHICH SHALL BEAR INTEREST AS PROVIDED BY LAW.

AND MONTHLY INSTALLMENTS OF $10,000 PER MONTH SHALL BE MADE DURING THE PERIOD OF SUPERVISED RELEASE.

THE PAYMENTS SHALL BEGIN 30 DAYS AFTER THE COMMENCEMENT OF SUPERVISION.

THE DEFENDANT SHALL COMPLY WITH GENERAL ORDER 1-05, WHICH I'VE ALREADY SAID.

PURSUANT TO THE SENTENCING REFORM ACT OF 1984, IT IS THE JUDGMENT OF THE COURT THAT THE DEFENDANT IS HEREBY COMMITTED ON COUNT EIGHT OF THE FIRST SUPERSEDING INDICTMENT TO THE CUSTODY OF THE BUREAU OF PRISONS TO BE IMPRISONED FOR A TERM OF 57 MONTHS CREDIT -- OR TIME SERVED.

THE DEFENDANT IS PLACED ON SUPERVISED RELEASE FOR A TERM OF THREE YEARS UNDER THE FOLLOWING TERMS AND CONDITIONS:

THE DEFENDANT SHALL COMPLY WITH THE RULES AND REGULATIONS OF THE UNITED STATES PROBATION OFFICE AND GENERAL ORDER 5-02.

THE DEFENDANT SHALL NOT COMMIT ANY VIOLATIONS OF

23

LOCAL, STATE, OR FEDERAL LAW OR ORDINANCES.

THE DEFENDANT SHALL REFRAIN FROM ANY UNLAWFUL USE OF A CONTROLLED SUBSTANCE.

THE DEFENDANT SHALL SUBMIT TO ONE DRUG TEST WITHIN 15 DAYS AND AT LEAST TWO PERIODIC DRUG TESTS THEREAFTER NOT TO EXCEED EIGHT DRUG TESTS PER MONTH AS DIRECTED BY THE PROBATION OFFICER.

THE DEFENDANT SHALL PARTICIPATE IN AN OUTPATIENT SUBSTANCE ABUSE TREATMENT AND COUNSELING PROGRAM THAT INCLUDES URINALYSIS, BREATH AND/OR SWEAT PATCH TESTING AS DIRECTED BY THE PROBATION OFFICER.

THE DEFENDANT SHALL ABSTAIN FROM USING ILLICIT DRUGS OR ALCOHOL OR ABUSING PRESCRIPTION MEDICATION DURING THE PERIOD OF SUPERVISION.

DURING THE COURSE OF SUPERVISION THE PROBATION OFFICER WITH THE AGREEMENT OF THE DEFENDANT AND DEFENSE COUNSEL MAY PLACE THE DEFENDANT IN A RESIDENTIAL DRUG TREATMENT PROGRAM APPROVED BY THE UNITED STATES PROBATION OFFICER FOR TREATMENT OF NARCOTIC ADDICTION AND/OR DRUG DEPENDENCY, WHICH MAY INCLUDE COUNSELING AND TESTING TO DETERMINE IF THE DEFENDANT HAS REVERTED TO THE USE OF DRUGS.  AND THE DEFENDANT SHALL RESIDE IN THE TREATMENT PROGRAM UNTIL DISCHARGED BY THE PROGRAM DIRECTOR AND PROBATION OFFICER.

AS DIRECTED BY THE PROBATION OFFICER, THE DEFENDANT SHALL PAY ALL OR PART OF THE COST OF TREATING THE DEFENDANT'S

DRUG OR ALCOHOLIC DEPENDENCY TO THE AFTERCARE CONTRACTOR DURING THE PERIOD OF COMMUNITY SUPERVISION PURSUANT TO TITLE 18 OF THE UNITED STATES CODE, SECTION 3672.

THE DEFENDANT SHALL PROVIDE A PAYMENT OR PROOF OF PAYMENT AS DIRECTED BY THE PROBATION OFFICER.  DURING THE PERIOD OF COMMUNITY SUPERVISION THE DEFENDANT SHALL PAY THE SPECIAL ASSESSMENT AND FINE IN ACCORDANCE WITH THE JUDGMENT'S ORDER PERTAINING TO SUCH PAYMENT.

THE DEFENDANT SHALL COMPLY WITH THE IMMIGRATION RULES AND REGULATIONS OF THE UNITED STATES.  AND IF DEPORTED FROM THE UNITED STATES -- OR, EXCUSE ME -- AND IF DEPORTED OR REMOVED FROM THE UNITED STATES, EITHER VOLUNTARILY OR INVOLUNTARILY, NOT REENTER THE UNITED STATES ILLEGALLY.

THE DEFENDANT IS NOT REQUIRED TO REPORT TO THE PROBATION OFFICER WHILE RESIDING OUTSIDE OF THE UNITED STATES.

HOWEVER, WITHIN 72 HOURS OF RELEASE FROM ANY CUSTODY OR REENTRY INTO THE UNITED STATES DURING THE PERIOD OF COURT-ORDERED SUPERVISION, THE DEFENDANT SHALL REPORT TO THE -- FOR INSTRUCTIONS TO THE UNITED STATES PROBATION OFFICE, LOCATED AT THE UNITED STATES COURT HOUSE, 312 NORTH SPRING STREET, ROOM 600, LOS ANGELES, CALIFORNIA 90012.

THE DEFENDANT SHALL APPLY ALL MONIES RECEIVED FROM ANY INCOME TAX REFUNDS, LOTTERY WINNINGS, INHERITANCES, JUDGMENTS, OR ANY UNANTICIPATED OR UNEXPECTED FINANCIAL OBLIGATIONS TO THE OUTSTANDING COURT-ORDERED FINANCIAL

25

OBLIGATIONS.  AND THESE FINANCIAL OBLIGATIONS INCLUDE, AS I SAID BEFORE, THE SPECIAL ASSESSMENT AND THE FINE AND WILL INCLUDE IF AND WHEN RESTITUTION IS DETERMINED ON MARCH -- ON DECEMBER 5TH -- WILL INCLUDE ANY RESTITUTION THAT IS ORDERED BY THE COURT.

THE DEFENDANT SHALL COOPERATE IN THE COLLECTION OF A DNA SAMPLE FROM THE DEFENDANT.

THE COURT AUTHORIZES THE PROBATION OFFICE TO DISCLOSE THE PRESENTENCE REPORT TO ANY SUBSTANCE ABUSE TREATMENT PROVIDER TO FACILITATE THE DEFENDANT'S TREATMENT FOR NARCOTIC ADDICTION OR DRUG DEPENDENCY.

FURTHER, REDISCLOSURE OF THE PRESENTENCE REPORT BY THE TREATMENT PROVIDER IS PROHIBITED WITHOUT THE CONSENT OF THE SENTENCING -- OR WITHOUT THE CONSENT OF THIS COURT.

THE COURT IS GOING TO ALSO ORDER THAT THE DEFENDANT'S BOND REMAIN UNTIL THE HEARING ON RESTITUTION, WHICH IS IN DECEMBER.

ALSO, THE COURT IS ORDERING THE DEFENDANT TO REMAIN HERE IN THE UNITED STATES UNTIL THAT HEARING IN DECEMBER.  I THINK IT'S DECEMBER 5TH.

MR. KENNER:  THANK YOU.

YOUR HONOR, MAY I JUST RAISE ONE SMALL ISSUE.

THE COURT:  SURE.

MR. KENNER:  MR. WAKNINE TAKES BY PRESCRIPTION FOR HIS TOURETTES TWO DRUGS, ONE IS CLONAPIN --

THE DEFENDANT:  NO, CLONIDINE.

MR. KENNER:  CLONIDINE.  I'M SORRY.  JUST CLONIDINE.  10 MILLIGRAMS.

WOULD YOUR ORDER REFLECT THAT WITH A DOCTOR'S PRESCRIPTION HE WOULD BE ENTITLED -- HE MAY CONTINUE TO TAKE THAT MEDICATION AS PRESCRIBED BY HIS DOCTOR.

THE COURT:  OKAY.  JUST A SECOND.

(PAUSE IN PROCEEDINGS.)

THE COURT:  YES.  THIS ORDER DOES NOT PERTAIN TO ANY MEDICINE THAT IS PRESCRIBED BY A DOCTOR.  ANY MEDICAL PRESCRIBED MEDICINE.

MR. KENNER:  THANK YOU, YOUR HONOR.

THE DEFENDANT:  THANK YOU VERY MUCH, YOUR HONOR.

MR. MC LAUGHLIN:  YOUR HONOR, THERE WOULD BE A MOTION TO DISMISS COUNTS -- LET'S SEE, ONE THROUGH SEVEN AND NINE THROUGH FORTY-SIX OF THE FIRST SUPERSEDING INDICTMENT.

AND THEN ALSO A MOTION TO DISMISS THE ORIGINAL UNDERLYING INDICTMENT.

THE COURT:  IT WOULD BE GRANTED.

NORMALLY THE APPEAL RIGHTS STARTS WITHIN 14 DAYS OF TODAY IF IT'S GOING TO BE APPEALED -- IF THE SENTENCING IS GOING TO BE APPEALED.  BUT IN THIS CASE I'M ASSUMING THAT EVERYBODY AGREES THAT RIGHT WOULD BE 14 DAYS FROM THE DAY THE RESTITUTION IS DETERMINED.

MR. MC LAUGHLIN:  THAT'S THE GOVERNMENT'S --

27

MR. KENNER:  YES, YOUR HONOR.

MR. MC LAUGHLIN:  -- VIEW, YES, YOUR HONOR.

THE COURT:  OKAY.  THAT WILL BE THE ORDER OF THE COURT.

MR. MC LAUGHLIN:  THANK YOU VERY MUCH.

(PROCEEDINGS ADJOURNED AT 2:29 P.M.)

28

REPORTER'S CERTIFICATE

          I HEREBY CERTIFY THAT THE FOREGOING IS A CORRECT

TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED

MATTER.

                              DATE:

                    /S/   MARGARET JEAN BABYKIN, CSR NO. 10466